THOMPSON, J.
 

 This controversy grows out of the construction of a bridge across the Tangipahoa river, on the Hammond-Coving-ton Highway, within the parish of Tangipa-hoa.
 

 The contract for the bridge was let, by joint authority of the Louisiana highway commission and the police jury of Tangipa-hoa parish, to one A. E. Perry, at the price of $37,648.54. The contract was in writing and duly recorded.
 

 A bond was executed by the contractor, with the United States Fidelity & Guaranty Company as surety. The bond was attached to and recorded with the contract, and was conditioned according to law for the faithful performance of the contract by said Perry, and the payment of all laborers, subcontractors, and furnishers of material and supplies under said contract.
 

 
 *93
 
 It seems that, before the contract was awarded to Perry;, one Meller wanted to bid 'on the work, but Mr. McGrath, manager of the United States Fidelity & Guaranty Company, would not go his security, because of his lack of financial responsibility. The manager of the surety company wrote or wired Perry to meet him in his office in New •Orleans. At this meeting it was agreed that Perry should bid on the work, and, if he was the successful bidder, he was to let the contract to Meller.
 

 McGrath says that the agreement was that Perry wa,s to get around 10 per cent, of the contract price, but Perry says that he subcontracted the bridge to Meller for 94 per cent, of his contract, and that he (Perry) was to pay for the material, steel, lumber, cement, and all that was to go into the bridge. The contract between Perry and Meller was verbal, and. no writing whatever was placed of record showing such contract. Meller su■perintended the construction of the bridge, hired the laborers, and bought the materials. He was not, however, recognized as the subcontractor by the highway commission, and all payments as the work progressed were made ■ directly to the contractor, Perry, who states as a witness that the checks were to be sent to him; that he was to take out what was necessary to reimburse him and pay the balance over to Meller.
 

 The bridge was completed, or at least it was accepted by the highway commission, on October 29,1924. There was at that time due the contractor on the contract price the sum of $9,380.39, with unpaid recorded claims for labor, materials, and supplies amounting to $17,865.17.
 

 The plaintiff: herein, being one of the largest unpaid creditors for material furnished and used in the construction of the bridge, instituted this suit, in which it prayed for judgment ordering the highway commission and the police jury to file a concursus, in order that petitioner’s claim might be adjudicated and paid out of the funds due the contractor, and further for judgment against the contractor and his surety. The highway commission answered, ' and deposited with the court the balance due the contractor, as stated previously.
 

 The United States Fidelity & Guaranty Company answered plaintiff’s petition, and prayed that all persons having recorded claims be called in to assert their respective claims.
 

 Answers were filed by all of the claimants,, and the concursus resulted finally in a controversy between the contractor and surety in common cause, on the one hand, and the claimants for labor and material, on the other.
 

 The district judge gave judgment in favor of eight of the claimants for their respective claims, amounting to the sum of $9,6S3.32, with interest and attorney’s fees, to be paid proportionally out of the fund on deposit, with the exception of $91.93 due Jahncke Service Company, for which judgment was only rendered against the contractor, Perry. Judgment was further given in favor of the eight claimants against the contractor, Perry, and the surety company, for such amount of théir respective claims as shall remain unpaid out of the fund on deposit. All other claims were rejected.
 

 The appeal is by, the contractor and the surety. The claimants whose demands were rejected, in toto have not appealed, nor have they answered the appeal of the contractor and surety. Hence we are not concerned with any Of those claims. W. L. Houlton, part of whose claim was not allowed, has answered the appeal, and asked that the judgment be amended in that respect.
 

 
 *95
 
 It is admitted by the contractor and the surety that the plaintiff’s claim, in principal, interest, and attorney’s fees, was properly allowed, and this is the only claim the contractor and surety were willing to confess was for material that actually entered into the construction of the bridge. All of the other claims allowed by the district judge are contested on various grounds.
 

 The first we shall consider is the rejected claims of W. L. Houlton. Of these claims, $1,000 is for the rental by Houlton to the contractor or subcontractor of the outfit used in constructing the bridge, consisting of a pile driver, cement mixer, tents, and tools. $225 is for the loss of a mule, which was rented by the contractor, and which mule was drowned while it was being worked in connection with the bridge construction.
 

 The other claim rejected is for $1,300, for tongued and grooved sheet piling, used to sink the pier in the middle of the river.
 

 The first two items were properly rejected, under the ruling in Red River Const. Co. v. Pierce Petroleum Corporation, 165 La. 566, 115 So. 752, and which was approved in State et al. v. Smith, 167 La. 301, 119 So. 56.
 

 It is true the language of the statute relating to the condition of the bond is very broad and comprehensive, yet we are of the opinion that it was never intended, that the bond should cover the price which the contractor had to pay, either for the purchase or for the rental of machinery, tools, and implements employed in the construction of the work.
 

 The contractor is supposed to furnish at his own expense the machinery and implements necessary to perform the work he has contracted to do, and it was never contemplated that his surety was obligated to pay for same.
 

 If oil and gasoline used in trucks and tractors hauling and spreading material on a public roadway are not covered by the bond, under Act 224 of 1918, as was held in the Bed Biver, etc., Case, supra, and for the reasons therein stated, then obviously for a much greater reason should it be held that the rental of the construction equipment and the value of a rented mule lost on the work do not come within the conditions of the bond.
 

 We are not prepared to hold, however, that the steel sheet piling is not within the letter of the bond. The obligation of the bond, as declared by the statute, is the payment by the contractor and, by all subcontractors for all work done, labor performed, or material furnished in the construction, erection, etc., of such work or public improvement. The sheet piling was furnished and was used in the construction of the bridge. It was used to sink the piers in the middle of the river, which support the bridge, and without which the bridge could not have been constructed.
 

 The testimony shows that the piling was left in place as a part of the permanent bridge structure. The claim, therefore, does not fall under the ruling in the two cases cited, supra.
 

 We think this claim should have been allowed against the contractor and his surety.
 

 The claims allowed in favor of Houlton by the court below we think were likewise covered by the bond. The one for.$143.99 was for lumber furnished for use and actually used in the construction of the bridge.
 

 The claim of $650 was for labor performed on the bridge. The wages were paid by Houl-ton on a regularly made out pay roll, giving the name of the laborer, the time he worked, and the amount due. The several laborers acknowledged payment by Houlton, and in the same receipt assigned their claims to
 
 *97
 
 Houlton, and subrogated him to all of their rights as against the contractor. On the same day that these wages were paid by Houlton, and the assignment and subrogation was made to him by the laborers, the contractor, Perry, and subcontractor, Meller, in writing recognized the claim of Houlton as being a valid claim and a lien against the contractor, and authorized the proper authorities to pay the same. The same situation appears with reference to the claims of Houlton for $763.23 and $451.23.
 

 It is argued that there is no proof that the laborers ever performed the work, or that they had ever been paid. The pay rolls were acknowledged in writing by Meller, the subcontractor, as being correct and due, and the amounts were receipted for by the laborers.
 

 Moreover, the testimony shows that the amounts were actually paid to the laborers. This was all that was necessary.
 

 It is further argued that the subrogation is not effective, because it is not shown whether the subrogations were entered into before the payment was made, or after the payment or contemporaneously with the payment. The receipt by the laborers and the assignment and subrogation is contained in one document. The acknowledgment of the subcontractor and recognition of Houlton’s claims bear the same date. The payment and subrogation and acknowledgment all appear to be contemporaneous, and in the absence of any proof to the contrary it must be presumed that the payment and subrogation occurred at the same time.
 

 It is further argued that the lower court erred in allowing interest and attorney fees on the Houlton claims, for the reason that no interest was prayed for, and that the petition failed to allege that demand had been previously made. This contention appears to be correct, and the interest and attorney fees were improperly allowed.
 

 What has been said with reference to the Houlton laborer’s claim is equally applicable to the claim of the Hammond Bank for amounts, $416.51 and $648.55, paid laborers.
 

 The evidence shows that the subcontractor presented the pay rolls to the bank, and on the faith of such pay rolls the bank gave him the money to pay the laborers. The payment was made to the laborers, and they signed the assignment and, subrogation, which was returned to the bank shortly thereafter.
 

 We entertain no doubt that the agreement for the subrogation was made before the laborers were paid, and the act of subrogation was signed when the said laborers received the payment. This was within the terms of article 2160, Civ. Code.,
 

 The other claim of the bank is for $213.09 for lumber sold by one Graves to the subcontractor for use in the construction of the bridge. The claim was a'ssigned by Graves to the bank, with full subrogation to all of his rights. Graves testified to the correctness of the account, and while he did not follow up the deliveries of the lumber, to see that it all went into the bridge, he did testify that the lumber was sold, and bought and delivered, for use in the bridge. We think this was all that was required. The claims of the bank were properly allowed.
 

 The next claim in order is that of Alexius Bros. & Co:, which was originally for $3,514.-12, but reduced by payments to $2,349.32, as per itemized statement on pages 59 to 63 of transcript.
 

 C. W. Alexius, on behalf of his firm, testified that both Perry and Meller came into .the store and requested the firm to let Meller have the stuff; that the account was opened at the request of Perry, and the items fur-
 
 *99
 
 níshédT as shown' by the account,'and which were delivered for use in the bridge. Some of this material the witness actually delivered at the bridge himself.' The payments on the account were made by the contractor, Perry. The claim, we think, was fully established.
 

 Counsel complain that the court below allowed interest on interest in this account, but we fail to find any item of interest charged in the ¿ccount.
 

 ■ The next claim is that of Smith Hardware Company for $855.35, and the defense is that the claim was not proven.
 

 Archie R. Smith, secretary and general manager of the company, testified to the correctness of the account, and that the various items were ordered by Meller, and were furnished and, delivered for ,use in the construction of the bridge, and were so used. This was sufficient, under the ruling in Haynesville Lbr. Co. v. Casey, 165 La. 1066, 116 So. 559.
 

 The claim of Jahncke for $201.93 is for gravel furnished for use in the construction of the bridge and for freight paid thereon. The defense to this claim is that it is not proven.
 

 • The testimony of Muller, superintendent of the Jahncke Service Company, of Forstall, bookkeeper and ' assistant treasurer, and Floyd Williams, agent of the Illinois Central Railroad Company, all sufficiently establish that the gravel was sold to the subcontractor and was delivered for use in the construction of- the bridge.
 

 This we take it was sufficient to establish the claim, in the absence of any proof to the contrary.
 

 There was only $110 of this claim allowed against the surety. The same defense is made to the claim of Frank Breckwoldt, $46.-44, and Ed. Breckwoldt, for $29.03. The claims are for labor performed, as itemized on pages 152 and 154 of transcript. The claims are sworn to as being for work done on the steel bridge spanning the Tangipahoa river.
 

 When the affidavits of the claimants for labor were offered in evidence, there was no objection to their admissibility in support of the claim, and no objection was made in the court below as to the sufficiency of the affidavits to make out the claims. We think a sufficient prima facie case was made out to entitle the claimants to judgment, in the absence of any contrary evidence.
 

 In conclusion, we might say that we are not impressed with the suggestion that the contractor and his surety are not bound for the materials bought and used in the bridge, because they were sold to the subcontractor.
 

 As we said before, the contractor, Perry, testified that under the agreement with Mel-ler he (Perry) was to pay for all of the labor, material, etc., was to receive the cheeks from the highway commission, and after reimbursing himself he was to pay over the balance to Meller. Under his own statement he was bound for the claims, and, as he was bound, so is his surety bound.
 

 But beyond this the law provides that the condition of the bond shall be for the faithful performance of the contract, and for the payment of all persons doing work, performing labor, or furnishing material therefor, by the contractor and by all subcontractors.
 

 Furthermore, it is shown that the surety company was instrumental in getting Perry to bid on the bridge- with the view of having him turn the contract over to Meller.
 

 It would be a travesty on the law and a mockery of -justice in these circumstances to permit the contractor and his surety to escape liability under the contract, and drive their creditors, who relied on the faith of the
 
 *101
 
 contract and bond, to recourse against an impecunious subcontractor, wbo was not even allowed, the privilege of receiving at first hand from the highway commission any of the price for the construction of the bridge.
 

 The judgment appealed from is amended, by adding to the amount allowed W. L. Houl-ton the sum of $1,300 for steel sheet piling. There is to be no interest or attorney’s fees on this item.
 

 The judgment is further amended by rejecting all interest and attorney fees allowed on the other items in favor of Houlton.-
 

 • In all other respects, the judgment is affirmed ; the appellants to pay cost of appeal.