f So.2d 545

## LOUISIANA HIGHWAY COMMISSION
### v. McCAIN et al.

No. 35478.

Jan. 6, 1941.

On Petition for Rehearing Feb. 6, 1941.

On Rehearing March 31, 1941.

Modisette & Adams, of Jennings, for G. B. Zigler Co:

John T. Hood, Jr., of Jennings, for St. Germain-Nohe Lumber Co., Inc.

Taylor, Porter, Brooks & Fuller, of Baton Rouge, for Great American Indemnity Co.

Arthur B. Hammond, of New Orleans, and James I. Smith, of Winnfield, for appellee.

PONDER, Justice.

On April 16, 1936, the Louisiana Highway Commission entered into a contract with Ernest L. McCain for the construction of a bridge and approaches over Bayou Nezpique. The Great American Indemnity Company was the surety on the contractor's bond. After the bridge was partially constructed the contractor became so involved that the surety on his bond took over and completed the contract. The Highway Commission, after the construction was completed, provoked a concursus proceeding and deposited the balance due on the contract in the registry of the court to be properly distributed among the various claimants who had furnished supplies and materials to the contractor, Ernest L. McCain. This action on the part of the Highway Commission became necessary because Ernest L. McCain had neglected to pay various claimants who had furnished supplies and materials for the construction of the bridge. Among the claimants appearing in the concursus proceeding were the appellants herein, G. B. Zigler Company and St. Germain-Nohe Lumber Company, Inc. Upon trial of the concursus proceeding the lower court gave judgment fixing the status of the claims of the various claimants. The appellants are the only claimants that have appealed from the judgment. The appeal insofar as G. B. Zigler Co. is concerned was taken because the lower court refused to recognize certain items of its claim as secured items. The appeal of the St. Germain-Nohe Lumber Co. was taken because the lower court would not impute a certain payment made by the contractor to the payment of certain,

items of appellant's claim, representing materials and supplies that did not go into the completed structure of the bridge.

The items in the claim of G. B. Zigler Co. which the lower court refused to recognize as being covered by the contractor's bond were for the rental of equipment used to construct the bridge, viz., rental for barges, a dragline, a bulldozer, tractors and graders. The barges were used to serve as a temporary bridge over which traffic was routed while the main bridge was being constructed. The contract under which the bridge was being constructed provided that the contractor furnish the temporary bridge consisting of barges.

Counsel for the appellant, G. B. Zigler Co., contends that the items in the claim for the rent of the barges, services of dragline, bulldozer, tractors and graders are covered by the contractor's bond and that the surety on the bond is liable for such items.

The liability of the surety on a bond of this nature is governed by Act No. 224 of 1918, as amended by Act No. 271 of 1926. Act No. 224 of 1918 has on numerous occasions been considered by this court with reference to the liability of a surety on a bond executed thereunder. It appears to be well settled that materials which form a component part of the completed structure or are consumed in the work are considered covered by the contractor's bond given under the provisions of Act No. 224 of 1918 and that the surety on such bond is liable therefor. On the other hand, it is equally well settled that the instrumentalities forming a part of the contractor's plant or equipment used in doing the work which survive the performance and remain the property of their owner after the completion of the contract are not covered by the bond given under the aforementioned act, and the surety is not liable for such. Rester v. Moody & Stewart et al., 172 La. 510, 134 So. 690. It has been held that the surety on a bond of this nature is not liable for lumber and nails furnished a subcontractor for use in making concrete bridge forms and temporary structures which did not become a part of the completed structure. Hayes Lumber Co. v. McConnell et al., 176 La. 431, 146 So. 14; also that the surety is not liable for the rental of a construction outfit consisting of a pile driver, cement mixer, tents and tools, Colonial Creosoting Co. v. Perry et al., 169 La. 90, 124 So. 182, also that the surety is not liable for supplies used to repair a dredge boat used to excavate a canal. John H. Murphy Iron Works v. United States Fidelity & Guaranty Co., 169 La. 163, 124 So. 768. The surety is not liable for materials used in repairing contractor's trucks. Rester v. Moody & Stewart, supra.

The bond in question is purely a statutory one and the liability thereon is determined by its provisions construed with reference to Act No. 224 of 1918. Red River Construction Co. v. Pierce Petroleum Co., 165 La. 565, 566, 115 So. 752. This court has consistently held that the bond given under the provisions of Act No. 224 of 1918 covers only such materials as are actually incorporated in the work. Rester v. Moody & Stewart, supra,

wherein many decisions are cited to that effect.

■ The equipment involved herein does not form a part of the completed structure and was not consumed in the prosecution of the work. The equipment survived the performance of the contract, remaining the property of the owners, and was available for use by the owners upon other contracts. Under such circumstances the surety would not be liable for the rental of the equipment. Rester v. Moody & Stewart, supra. Moreover, the contractor is supposed to furnish at his own expense the machinery and implements necessary to perform the work he has contracted to do. Colonial Creosoting Co. v. Perry, supra; Rester v. Moody & Stewart, supra.

■ Counsel for the defendant contends that since the contract required the contractor to furnish the barges the rental for such must be considered as supplies under the meaning of Act No. 224 of 1918, as amended, citing Miller v. Bonner, 163 La. 332, 111 So. 776, and Long Bell Lumber Co. et al. v. Carr Construction Co., 172 La. 182, 133 So. 438, in support of this contention. The case of Miller v. Bonner et al., supra, is not applicable because the bond involved therein was not a statutory bond but a conventional one. Bickham v. Womack et al., 181 La. 837, 160 So. 431. The bond involved herein is a statutory bond and we must look to the statute to find the conditions of the bond; for whatever is written in it, not required by statute, must be read out of the bond, and whatever is not expressed in it, but which ought

to have been incorporated, must be read into it. Electrical Supply Co. v. Freeman, Inc., et al., 178 La. 741, 152 So. 510.

The case of Long Bell Lumber Co. v. Carr Construction Co., supra, is not applicable because the materials furnished therein were consumed in the prosecution of the work.

■ The St. Germain-Nohe Lumber Co. furnished materials to the contractor, E. L. McCain, during the construction of the bridge. On March 31, 1937, the contractor owed the St. Germain-Nohe Lumber Co. $129.08 plus a 2 per cent. sales tax, making $131.66, for materials furnished the contractor that did not go into or form a part of the completed structure of the bridge. On that date, March 31, 1937, the contractor was also indebted to the St. Germain-Nohe Lumber Co. in the sum of $721.51 for materials that did go into and form a part of the completed structure. It appears that during the month of March, 1937, S. A. Peters, the job superintendent of the contractor, had ordered from the appellant herein some materials to be used in building the bridge. On March 29, 1937, the appellant addressed a letter to the job superintendent stating that it could furnish the materials but on account of there being a question as to whether the materials would form a part of the completed structure it would only furnish the materials under the following agreement, viz: that there would be an account kept of the materials used that did not go into the structure of the bridge separate from all other materials furnished by the appellant; that all payments thereafter made were to be

held until the bridge was completed or until the appellant was notified that the job superintendent did not need any further materials; and that all payments were to be held by the appellant until the bridge was completed or until it was notified that no further materials were needed, which payments the appellants were to apply first toward payment of the indebtedness or account of the materials mentioned in the letter which were not actually used as a part of the completed structure. It was also stated in the letter that the balance of the amount received by the superintendent, if any, would be applied to the payment of any other accounts due the appellant. On March 31, 1937, the superintendent wrote to the appellant accepting the materials and agreeing that the payments were to be applied in accordance with the terms stated in the letter from the appellant and waived whatever rights the contractor had with reference to the imputation of such payments. Subsequent to this agreement the job superintendent purchased $550.58 worth of materials which did not go into and form a component part of the bridge, and purchased $121.58 worth of materials that did go into the completed structure. On May 4, 1937, a payment of $700 was made to the appellant by the contractor. From the testimony in the case there seems to be a dispute as to whether the payment was intended to be applied to the indebtedness of the contractor for materials acquired prior to the agreement of March 31. The testimony on this question is very conflicting. Such being the case, the agreement of March 31 should control. It appears that the job superintendent was in charge of the works and purchased all the materials. The agreement entered into by the job superintendent was most conducive to the interest of the contractor under the circumstances. The appellant had the right to rely on the authority of the superintendent to enter into such a contract because the superintendent had purchased many materials from it and others with the apparent approval of the contractor.

The agreement of March 31 deals with future transactions and in our opinion contemplates that subsequent payments were to be applied to future purchases of materials that would not go into the permanent structure. The appellants applied the $700 to the payment of all purchases of materials that were not secured, materials acquired prior to and subsequent to the agreement. The judgment of the lower court allowed the appellant $121.69 of the $700 on the amount due the appellant for materials that did not go into the completed structure. In our opinion the payment should be applied, under the terms of the agreement, to the amount due for materials purchased subsequent to the agreement and the balance applied on the payment of materials furnished by the appellant that did go into the completed structure. The record shows that $550.58 worth of materials, that did not go into and form a part of the completed structure, were purchased after March 31. An amount equal to this should be applied in payment thereof out of the $700. The balance should be imputed as the law directs because the agreement of March 31 does not provide that it be applied to any particular account. The

agreement merely states that the balance, if any, is to be applied to any other accounts due the appellant without reciting the manner in which it is to be done.

Counsel contends that the imputation of the payment made by the appellant to the unsecured debt had become irrevocable for the reason that the contractor had not objected to the manner in which the imputation of the payment had been made after having received statements of the accounts. Under the evidence in this case no purpose could be gained by a discussion of these authorities because the statements of the accounts did not inform the contractor how the imputation was made. In fact, the testimony offered by the appellant shows that the statements of the accounts did not show how the imputation had been made. Under such circumstances the debtor was not apprised of the manner in which the imputation had been made and therefore could not be considered to have acquiesced in it.

The appellant contends that the judgment of the lower court should be amended by allowing it 10 per cent. attorney's fees under the provisions of Section 8 of Act No. 224 of 1918. The appellant would have to recover the full amount of its recorded claim to be entitled to the attorney's fees. This it has failed to do. The appellant's claim representing secured items was for $830.63. Having arrived at the conclusion that $550.58 of the $700 should be applied to the payment of appellant's claim for unsecured items the balance of $149.42 is applied to the claim of $830.63, thereby reducing the appellant's claim for the secured items. The judgment of the lower court should be amended so as to increase the amount allowed the St. Germain-Nohe Lumber Co. from $560.-89 to $698.67.

For the reasons assigned, the judgment of the lower court is amended so as to increase the amount allowed the St. Germain-Nohe Lumber Company to $698.67. As amended, the judgment is affirmed.

O'NIELL, C. J., does not take part.

On Petition for Rehearing.

PER CURIAM.

In the above-numbered and entitled matter:

It is ordered that the application for rehearing of St. Germain-Nohe Lumber Company, Inc., be granted.

It is further ordered that the application for rehearing of G. B. Zigler Company be refused.

On Rehearing.

HIGGINS, Justice.

We granted a rehearing in this concursus proceeding on the application of the St. Germain-Nohe Lumber Company, Inc., because in deciding that the judgment of the district court as to the secured claims should be increased to $698.67, we erroneously amended the judgment which that court had rendered for unsecured claims—$560.89—instead of amending its award for secured claims of $269.75. Our attention was not directed to the fact nor

did we notice that the judgment of the district court inadvertently failed to grant judgment against the contractor, Ernest L. McCain, and the surety on his statutory bond, the Great American Indemnity Company, in solido. Therefore, an amendment to the judgment of the lower court increasing the amount on the secured claims from $269.74 to $698.67, without granting judgment against the contractor and his surety, in solido, would deprive the St. Germain-Nohe Lumber Company, Inc., of its definite and clear right to such judgment.

As the total of the claims of the St. Germain-Nohe Lumber Company, Inc., amounted to $830.63, after we concluded that the claimant was in error, for the correct amount of the unpaid secured claims was only $698.67, the balance of $131.96 was necessarily held to be unsecured. In the district court's decree, as well as our own, we failed to grant judgment against Ernest L. McCain, contractor, individually, for the amount of the unsecured claims, which we find to be the sum of $131.96 instead of the sum of $560.89 allowed by the district court. Therefore, these two errors in our decree will be corrected by amending it accordingly.

Counsel for the surety company reiterate their original argument as to the imputation of payments in an effort to show that the amount allowed on the secured claims by us of $698.67 is incorrect. This contention is predicated on the attempted repudiation by the contractor of the agreement, dated March 29, 1937, in the form of a letter signed by the contractor's job superintendent and claimant. It is said that the superintendent had no authority to sign the letter. As stated in our original opinion, his authority was plainly implied, and as the contractor received and retained the benefits resulting from the agreement, it is now too late to try to repudiate it.

For the reasons assigned, it is ordered, adjudged and decreed that our original decree is amended by hereby granting judgment in favor of St. Germain-Nohe Lumber Company, Inc., and against Ernest L. McCain and the Great American Indemnity Company, in solido, in the full sum of $698.67, with legal interest from judicial demand until paid, and in favor of the St. Germain-Nohe Lumber Company, Inc., and against Ernest L. McCain in the full sum of $131.96, with legal interest from judicial demand until paid, and, as thus amended, our original decree is reinstated, and made the final judgment of this court; defendants to pay all costs.

O'NIELL, C. J., and LAND, J., absent.