Plaintiff, John R. Hughes, is a houseraiser and shorer, doing business under the name "Orleans Houseraising and Shoring Company." George J. Cameron, Sr., defendant, is the owner of a building which he desired to have raised and remodelled. O.R. Will is the son-in-law of Cameron and, having been in the military service during the last World War, was entitled to certain priorities in the securing of material and fixtures. Joseph Gould, at the time of the occurrences with which we are concerned, was a building contractor in New Orleans operating under the name "J. Gould Company."
On April 30, 1946, Gould, as contractor, entered into a contract with Cameron and Will, as owners, for the raising and remodelling of the said building. This contract was not recorded. Gould employed Hughes to do the raising of the building under a subcontract which provided for a payment of $600. This contract also provided for an allowance of twenty-one days for the free use of the jacks on which the building was to be raised after the completion of the raising, and for a charge of fifty cents per day for each jack should the jacks be required to remain under the building for more than twenty-one days.
Gould, the general contractor, defaulted on the contract and Cameron, who was, in fact, the owner of the building, undertook to complete the work himself. The raising contract was carried out by Hughes and after this subcontract had been completed Hughes, on August 8, 1946, recorded in the Mortgage Office of the Parish of Orleans an affidavit in which he set forth the fact that he had entered into the subcontract; that he had been paid only $200; that there was a balance due of $400 on the contract, and that there was due "in addition thereto, fifty cents per day for each of five jacks remaining on the job since July 9th, 1946." In this affidavit he stated that O.R. Will was the owner of the building.
On October 29, 1946, Hughes recorded in the Mortgage Office another affidavit in which he stated that George J. Cameron, Sr., was the owner of the building and in which he also stated that there was a balance due on the contract of $400 "plus demurrage of fifty cents per day per jack for each jack used on the building." On that same day, to wit: October 29, 1946, he also recorded an affidavit in which he stated that he desired "to supplement and amend the original affidavit filed herein," that is to say, the lien filed on August 8th as against Will, by stating that the said *Page 243 
premises were owned by George J. Cameron, Sr.
Hughes then filed suit against Will and Cameron and also the general contractor, Gould, claiming $400 as the balance on the stipulated contract price and $594.50 as the amount due for the retention of jacks beyond twenty-one days after the completion of the raising contract. He later filed a supplemental petition in which he claimed an additional $28.13 for lumber left on the job after the completion of his work.
His right to sue the owner and his right to a lien for any balance due on the contract price of $600 are not disputed, it being conceded that because of the provisions of Act No. 298 of 1926, since the contract was not recorded, and since the owner obtained no bond from the contractor, the owner may, himself, be held liable to subcontractors, laborers and furnishers of material, and that a lien may be filed against the building. But defendants first of all contend that Will is not one of the owners and they further aver that the liens were not filed within the time limit fixed in the said statute, and they also contend that the amount claimed for the use of the jacks beyond the free time period fixed in the contract is a claim for which a lien may not be filed, and, finally, they claim that if such a lien may be filed, the amount claimed is not correct.
The owner, Cameron, by reconventional demand, asserts that the work was not done in a careful and proper manner; that his building was damaged and that as a result he is entitled to a judgment in reconvention against Hughes in the sum of $1,286.
There was judgment in favor of Hughes dismissing the suit as against Will, but against George J. Cameron, Sr., and Gould, the contractor, in the sum of $907, recognizing the lien and privilege in favor of Hughes, and dismissing the reconventional demand of Cameron. From this judgment Cameron has appealed.
The record shows that the work of Hughes in raising the house was completed more than sixty days before the recordation of any of the three liens referred to and defendant, calling attention to this, maintains that because of this delay no right to a lien remains in Hughes, and that he, therefore, has no right to assert his claim against the owner.
This identical question, that is whether the lien of a subcontractor, laborer or materialman must be filed within sixty days from the time at which that particular work is completed or that particular material is delivered, was considered by the Supreme Court in National Homestead Association v. Graham, 176 La. 1062, 147 So. 348, 351, wherein the Supreme Court held that such a lien may be filed at any time within sixty days of the completion of the general contract. In that case the Supreme Court stated the contention and its conclusion as follows:
"The contention made by the homestead company is that in order that a laborer, materialman, or any other may obtain a lien he must file and record his claim within sixty days from the date on which he performs his last labor, or furnishes the last material. We do not so construe the language of the act. We construe it to mean that the claim must be filed and recorded within 60 days after the last labor is performed on or last material is furnished for the building by any one. In other words, if the claim is filed within 60 days after the final completion of the building, it is in time, even though the laborer or furnisher of material did not file his claim within 60 days after he performed his last labor or furnished his last material on the building."
[1] The record shows that the principal job was not complete until long after the recordation of the three liens referred to and, therefore, the recordation was well within the time limit as construed by the Supreme Court in the Graham case.
Defendant's next contention is that there can be no lien for the amount which was charged for the rental of the jacks which remained supporting the building after it had been raised and before the new foundation was constructed under it. It is argued that a statute authorizing a building lien and permitting a claim to be made directly against an owner is in derogation *Page 244 
of common right and must be strictly construed and that, therefore, the language of such a statute can not be so broadly interpreted as to permit it to include a claim for rental of machinery.
[2] It is true, of course, that lien statutes must be strictly construed. Griffith v. Williams, La. App.,19 So.2d 277; Yellow Pine Lumber Co. v. Maniscalco et al., La. App.,9 So.2d 320, and Lawrence v. Wright et al., 11 La. App. 703, 124 So. 697.
It is true, too, that in several cases it has been held that where a contractor or subcontractor finds it necessary to rent or purchase machinery or tools to carry out his contract, no lien against the work itself and no personal claim against the owner of the building may be asserted by the renter or seller of the machinery.
In Colonial Creosoting Co. v. Perry et al., 169 La. 90,124 So. 182, 184, the Supreme Court said:
"It is true the language of the statute relating to the condition of the bond is very broad and comprehensive, yet we are of the opinion that it was never intended that the bond should cover the price which the contractor had to pay, either for the purchase or for the rental of machinery, tools, and implements employed in the construction of the work.
"The contractor is supposed to furnish at his own expense the machinery and implements necessary to perform the work he has contracted to do, and it was never contemplated that his surety was obligated to pay for same."
See, also, Louisiana Highway Commission v. McCain,197 La. 359, 1 So.2d 545, 548, in which appears the following:
"The equipment involved herein does not form a part of the completed structure and was not consumed in the prosecution of the work. The equipment survived the performance of the contract, remaining the property of the owners, and was available for use by the owners upon other contracts. Under such circumstances the surety would not be liable for the rental of the equipment. Rester v. Moody Stewart, supra [172 La. 510, 134 So. 690]. Moreover, the contractor is supposed to furnish at his own expense the machinery and implements necessary to perform the work he has contracted to do. * * *"
We think, though, that the situation here is quite different from that found in these or any other similar cases. Here, it was contemplated in the contract that there might be a necessity that the building remain on the jacks during the construction of the new foundation for a longer period than twenty-one days, and it was expressly provided that, if this necessity should arise, there would be a charge therefor. The necessity did arise, apparently due to the fact that the construction of the foundation took longer than was contemplated and, no doubt, due to the fact that it was cheaper to let the jacks remain in place than to construct a temporary foundation, the jacks were allowed to remain and the additional indebtedness was incurred.
[3] This is not at all the situation which is found where a contractor, in order to carry out his contract, has to buy or rent tools or machinery. If such tools or machinery are necessary for the carrying out of the contract, it is presumed that he has them or will obtain them at his own expense. But, where it is found that, after his work is completed, for the benefit of the work as a whole, it is best that he leave a part of his equipment in place, we see no reason why a charge should not be made for the use of the equipment and why that charge, particularly if contracted for in advance, should not form the basis of a lien against the building and a claim against the owner. We think, then, that the plaintiff is entitled to a lien based on the rental charge for the use of the jacks after the twenty-one day period, and the next question which is, therefore, to be considered is how much has been proven on this item and how much has been set forth in the lien affidavits.
As we have shown, three affidavits were recorded in the Mortgage Office. The first, recorded against Will, who was not the owner, is the only one which attempted in any way to set forth the amount due on this part of the claim, and that affidavit stated only that Hughes was entitled to collect "fifty cents per day for each of five jacks remaining on the job, since July 9, 1946." *Page 245 
Neither the affidavit filed against Cameron, as owner, nor the affidavit which amended the first affidavit against Will so as to show that Cameron was the owner, shows any amount whatever on this particular item.
[4, 5] It is true that there is nothing sacramental about the form or contents of a lien affidavit. Mercantile National Bank of Dallas v. J. Thomas Driscoll, 194 La. 935, 195 So. 497. There, however, the court, after stating that the form of the affidavit was unimportant, went on to say that such statutes contemplate that in the affidavit there must be set forth the amount claimed. And we think there can be no doubt of this. If liens are to be strictly construed, it is obvious that there must be set forth information as to how the claim arises, against whom it is to be asserted, and the amount thereof. This claim, therefore, so far as the owner is concerned and so far as the lien is concerned, must be limited to the amount set forth in the affidavits.
[6] The most that can be said of the three lien affidavits is, if read together, they show a claim based on a rental of fifty cents per day for each of five jacks from July 9, 1946, to the day on which they were removed from the job, which day is shown to have been August, 18, 1946. But even this amount cannot be allowed in full because the record shows very plainly that the twenty-one days of free time did not expire as set forth in the affidavit on July 9th, but expired only on July 13th. We say this because it is very clear that the raising of the building was completed on June 22, 1946. If the twenty-one days free time commenced to run on June 23rd, then the last of those twenty-one days was July 13th. The first day for which a charge could be made was July 14th, and since the jacks were removed on August 18th, the last day for which a charge could be made was August 17, 1946. This was a total of thirty-five days at fifty cents per day for each of five jacks, therefore, the total charge which could be made was $87.50.
This amount must be added to the $400 which is not in dispute and which represents the unpaid balance of the stipulated contract price.
The record shows that the reconventional demand was properly dismissed as was the supplemental claim for $28.13. Neither of these items was discussed in oral argument or in brief by counsel for either party.
We hold then that the total amount to which plaintiff is entitled is $487.50. Accordingly,
It is ordered, adjudged and decreed that the judgment appealed from be and it is amended by the reduction of the amount thereof to $487.50, and as thus amended, it is affirmed, costs of appeal to be paid by appellee, all other costs to be paid by appellant.
Amended and affirmed.