143 So.2d 745 (1962)
Nick MARTINOLICH, Plaintiff-Appellee,
v.
Clarence ALBERT et al., Defendants-Appellants.
No. 5293.
Court of Appeal of Louisiana, First Circuit.
April 23, 1962.
*746 Deutsch, Kerrigan & Stiles, by A. Morgan Brian, Jr., New Orleans, for appellants.
Robert D. Morvant, Thibodaux, for appellee.
Before ELLIS, HERGET and MILLER, JJ.
ELLIS, Judge.
On December 10, 1954 the city of Thibodaux and its authorized Sewerage District as "Owner" entered into a written contract with Hebert Brothers Engineers, a partnership (hereinafter referred to as "Hebert Brothers") as contractor, for the construction of new and improved sewerage facilities for the City of Thibodaux amounting to $1,308,585.00. In connection therewith, Hebert Brothers gave to the owner a payment and performance bond covering the full contract price with Fidelity and Casualty Company of New York as "Surety" thereon, which contract and attached bond were duly recorded on December 13, 1954.
Thereafter Hebert Brothers entered into a written sub-contract with Clarence Albert, hereafter referred to as "Sub-contractor", for a portion of the work provided for in the original contract amounting to $486,026.00, and this sub-contractor obtained from Employers Liability Assurance Corporation, Ltd., hereafter referred to as "Employers", a bond as surety for sub-contractor which was executed on January 6 and 7, 1955 in connection with the sub-contract agreement. This bond was a performance bond in the amount of $376,000.00, however, it was never recorded.
About February 1957 Sub-contractor was unable to meet his obligation and defaulted in his sub-contract with Hebert Brothers and in the amount or account allegedly due plaintiff in the sum of $7,562.92. There were other claims which were subsequently compromised. A lien was timely filed by plaintiff for the amount of his claim with supporting invoices, which created a purported lien against the job's retained contract funds in Owner's possession under the public works law.
Owner's formal written acceptance of Hebert Brothers entire completed job, including Sub-contractor's portion thereof, was duly recorded on September 3, 1957.
On October 23, 1957, Hebert Brothers "bonded out" the purported liens by duly recording a lien-release bond running in the Recorder's favor in sufficient amount with the American Employers Insurance Company as "surety" thereon, and therefore all purported liens were cancelled and erased from the records, the lien-release bond itself thereby becoming plaintiff's statutory security in lieu of the previously liened contract funds retained by the Owner.
Thereafter the Owner settled all issues and accounts between it and Hebert Brothers and paid all remaining contract funds *747 to the latter, and in due course commenced using the completed sewerage facilities.
Sureties on the payment and performance bonds denied all liability to plaintiff and refused to make any settlements with him, contending that his claim was solely for equipment rental charges and therefore not covered by statutory bonds on public works jobs.
Accordingly, plaintiff filed his suit herein on November 4, 1957, against five defendants, viz.: owner, Hebert Brothers and its surety, Fidelity and Casualty Company of New York, Sub-contractor and its surety, Employer's Liability Assurance Company, Ltd.
Plaintiff alleged that "in connection with the work to be performed under said original contract and said sub-contract petitioner sold, furnished and/or performed certain merchandise, machinery and labor unto the defendant, Clarence Albert, at his request all of which was consumed and/or used in the construction of said sewerage system," and that an itemized statement covering such services and charges had been annexed to the lien affidavit and same was made a part "hereof by reference the same as though fully copied herein." Plaintiff also plead alternatively for a judgment on the quantum meruit basis.
Owner and Hebert Brothers filed joint exceptions of no cause or right of action and subsequently filed joint answers. Hebert Brother's surety, Fidelity and Casualty Company of New York, and Sub-contractor's surety, Employers Liability Assurance Corporation, Ltd., filed a joint answer and subsequently exceptions of no cause or right of action. By stipulation the exceptions were referred to the merits. No answer was filed by Sub-contractor nor any other pleadings and judgment by default was rendered against him in favor of plaintiff, from which no appeal was perfected.
The case was duly tried on the merits, submitted on briefs, and the trial court, with written reasons, rendered judgment on December 8, 1959 in favor of the plaintiff and against all defendants in solido as prayed for except penalties. All defendants except the Sub-contractor have appealed to this Court.
Under the provisions of LSA-R.S. 38:2241 the Owner in the case at bar was required through its governing authority to reduce "the contract to writing and have it signed by the parties. He shall require of the contractor a bond, with good, solvent, and sufficient surety in a sum not less than fifty percent of the contract price for the faithful performance of the contract with an additional obligation for the payment by the contractor or subcontractor for all work done, labor performed, or material or supplies furnished for the construction, alteration, or repair of any public works, or for furnishing materials or supplies for use in machines used in the construction, alteration, or repair of any public works. No modifications, omissions, additions in or to the terms of the contract, in the plans or specifications or in the manner and mode of payment shall in any manner affect the obligation of the surety. * * *"
In accordance with the above quoted law the Owner required, and Hebert Brothers Engineers as the contractor, furnished, the statutory bond with Fidelity and Casualty Company of New York as Surety.
It is well-settled in our jurisprudence that the obligations of a statutory bond are limited to the exact provisions of the statute. In the Supreme Court case of Red River Const. Co. v. Pierce Petroleum Corporation, 165 La. 565, 115 So. 752, the Court stated:
"In this state laws in derogation of common right must be strictly construed and cannot be extended beyond their precise terms. Of this character are statutes of the kind under consideration herestatutes which are designed to hold the public authority having the work done responsible, under certain circumstances, for the debts of *748 the contractor, and to hold the contractor responsible for the debts of the subcontractors, and to substitute the bond required for the security which is otherwise granted a claimant under their provisions."
Also in Miller v. Bonner, 163 La. 332, 111 So. 776, the Supreme Court held:
"It is clear from these provisions that the bond required by the statute must be made in favor of the state, as the only obligee, and must be conditioned solely as to the faithful performance of the contract by the successful bidder.
"The state highway department, however, has required of the contractor in this case, not only the assumpsit of the statutory condition as to the performance of the contract, but has exacted the superadded condition that Bonner `shall pay all sums due on materials and supplies used and for wages earned by laborers and workmen employed upon the work to be done.'
"The bond contains also stipulations pour autrui in favor of `all subcontractors, workmen, laborers, mechanics and furnishers of material and supplies.' It is a well-settled doctrine, not only in this state, but in the other states of the Union, that where a bond is given under the authority of a law, whatever is included in the bond and which is not required by the law must be read out of it, and whatever is not expressed and ought to have been incorporated must be read as if inserted into it. Macready v. Schenck, 41 La. Ann. 456, 6 So. 517; Slocomb v. Robert,' 16 La. 173; Davis v. West Louisiana Bank et al., 155 La. 245, 99 So. 207, Id., 155 La. 252, 99 So. 210; Corpus Juris, vol. 9, par. 56; Boswell v. Lainhart et al., 2 La. 397.
"It follows, therefore, that the Bonner bond must be given the effect which in reason must have been intended by the statute.
"Reading out of the bond all superadded conditions and stipulations, we have left intact a purely statutory bond, executed in favor of the state of Louisiana, and conditioned for the faithful performance of the contract to build this highway in accordance with the plans, specifications, and terms of the contract."
Further, the law does not require a bond to be furnished by a subcontractor and where same is furnished the obligations of the Surety are co-extensive with the terms and provisions of the particular bond. In Miller v. Bonner, supra, the Supreme Court held:
"There is no provision in Act 49 of 1910 requiring a subcontractor to give bond to a contractor. The bond in question, therefore, is conventional and not statutory, and its provisions, as written therein, necessarily constitute the law of the case between the parties, when considered in connection with the contract of Bonner. Although Bonner is not liable to Miller or to the intervenors on his bond signed by the United States Fidelity & Guaranty Company as surety, yet he is personally liable to them as contractor in the case." Also see Bickham v. Womack, 181 La. 837, 160 So. 431.
It is equally true that the coverage afforded under statutory bond has been interpreted many times by courts of this state in the past. In Louisiana Highway Commission v. McCain, Supreme Court, 197 La. 359, 1 So.2d 545, the Court stated:
"The liability of the surety on a bond of this nature is governed by Act No. 224 of 1918, as amended by Act No. 271 of 1926. Act No. 224 of 1918 has on numerous occasions been considered by this court with reference to the liability of a surety on a bond executed thereunder. It appears to be well settled *749 that materials which form a component part of the completed structure or are consumed in the work are considered covered by the contractor's bond given under the provisions of Act No. 224 of 1918 and that the surety on such bond is liable therefor. On the other hand, it is equally well settled that the instrumentalities forming a part of the contractor's plant or equipment used in doing the work which survive the performance and remain the property of their owner after the completion of the contract are not covered by the bond given under the aforementioned act, and the surety is not liable for such. Rester v. Moody & Stewart et al., 172 La. 510, 134 So. 690. It has been held that the surety on a bond of this nature is not liable for lumber and nails furnished a sub-contractor for use in making concrete bridge forms and temporary structures which did not become a part of the completed structure. Hayes Lumber Co. v. McConnell et al., 176 La. 431, 146 So. 14; also that the surety is not liable for the rental of a construction outfit consisting of a pile driver, cement mixer, tents and tools, Colonial Creosoting Co. v. Perry et al, 169 La. 90, 124 So. 182, also that the surety is not liable for supplies used to repair a dredge boat used to excavate a canal. John H. Murphy Iron Works v. United States Fidelity & Guaranty Co., 169 La. 163, 124 So. 768. The surety is not liable for materials used in repairing contractor's trucks. Rester v. Moody & Stewart, supra.
"The bond in question is purely a statutory one and the liability thereon is determined by its provisions construed with reference to Act No. 224 of 1918. Red River Construction Co. v. Pierce Petroleum Co., 165 La. 565, 566, 115 So. 752. This court has consistently held that the bond given under the provisions of Act No. 224 of 1918 covers only such materials as are actually incorporated in the work. Rester v. Moody & Stewart, supra, wherein many decisions are cited to that effect.
"The equipment involved herein does not form a part of the completed structure and was not consumed in the prosecution of the work. The equipment surviving the performance of the contract, remaining the property of the owners, and was available for use by the owners upon other contracts. Under such circumstances the surety would not be liable for the rental of the equipment. Rester v. Moody & Stewart, supra. Moreover, the contractor is supposed to furnish at his own expense the machinery and implements necessary to perform the work he has contracted to do. Colonial Creosoting Co. v. Perry, supra; Rester v. Moody & Stewart, supra.
"Counsel for the defendant contends that since the contract required the contractor to furnish the barges the rental for such must be considered as supplies under the meaning of Act No. 224 of 1918, as amended, citing Miller v. Bonner, 163 La. 332, 111 So. 776, and Long Bell Lumber Co. et al v. Carr Construction Co., 172 La. 182, 133 So. 438, in support of this contention. The case of Miller v. Bonner et al, supra, is not applicable because the bond involved therein was not a statutory bond, but a conventional one. Bickham v. Womack et al, 181 La. 837, 160 So. 431. The bond involved herein is a statutory bond and we must look to the statute to find the conditions of the bond; for whatever is written in it, not required by statute, must be read out of the bond, and whatever is not expressed in it, but which ought to have been incorporated, must be read into it. Electrical Supply Co. v. [Eugene] Freeman, Inc. et al, 178 La. 741, 152 So. 510.
"The case of Long Bell Lumber Co. v. Carr Construction Co., supra, is not applicable because the materials furnished *750 therein were consumed in the prosecution of the work."
Again, in a case decided by this Court, B. & G. Crane Service, Inc. v. Anderson Brothers Corp., La.App., 132 So.2d 681, 682, we held:
"As to the lienability of the various liens filed, we feel that the jurisprudence is to the effect that substantial portions thereof are not lienable items. It appears to be well settled that materials which form a component part of the completed structure or are consumed in the work are considered covered by the contractor's bond given under the provisions of Act No. 224 of 1918 (LSA-R.S. 38:2241) and that the surety on such bond is liable therefor. On the other hand, it is equally well settled that the instrumentalities forming a part of the contractor's plant or equipment used in doing the work which survive the performance and remain the property of their owner after the completion of the contract are not covered by the bond given under the aforementioned act, and the surety is not liable for such. Rester v. Moody & Stewart et al., 172 La. 510, 134 So. 690; Long Bell Lumber Co. v. Carr Construction Co., 172 La. 182, 133 So. 438; Louisiana Highway Commission v. McCain, 197 La. 359, 1 So.2d 545; Colonial Creosoting Co. v. Perry, 169 La. 90, 124 So. 182; General Lumber & Supply Co. v. Hunter, 17 La.App. 71, 134 So. 759. The lien of Hoover, upon which a balance is due in the sum of $950.99, discloses that a substantial portion thereof was for repairs, sale, or rental of equipment which survived the work. There was no evidence to show that these various items were consumed during the project. The only lienable items in the claim of Hoover was in the amount of $8.15, representing the purchase of gasoline."
In an earlier case of Colonial Creosoting Co. v. Perry, 124 So. 182, cited in the McCain and B. & G. Crane cases, supra, the Supreme Court of Louisiana stated:
"It is true the language of the statute relating to the condition of the bond is very broad and comprehensive, yet we are of the opinion that it was never intended that the bond should cover the price which the contractor had to pay, either for the purchase or for the rental of machinery, tools, and implements employed in the construction of the work.
"The contractor is supposed to furnish at his own expense the machinery and implements necessary to perform the work he has contracted to do, and it was never contemplated that his surety was obligated to pay for same."
It is therefore well settled that unless the items which compose the plaintiff's claim form a component part of the completed structure or are consumed in the work, they are not lienable nor are they covered by the contractor's bond given under the provisions of Act No. 224 of 1918 as amended, LSA-R.S. 38:2241. The plaintiff contends that his claim was for necessary work done by his men and equipment under his control for which he charged so much an hour. The district judge agreed with this contention of the plaintiff. On this point the District Judge in his written reasons stated:
"* * * The evidence further shows that an agreement was entered into between the plaintiff and Clarence Albert whereby plaintiff performed portions of the work provided for in said subcontract at a price of so much per hour. The evidence also shows that plaintiff did not merely rent his equipment to Clarence Albert, but on the contrary, sent his men and equipment to the particular site and performed the work requested by the said Clarence Albert and that the men and equipment were under the control of either plaintiff or his foreman * * *".
*751 On the other hand it is the contention of the owner, the City of Thibodaux and Sewerage District No. 1, and the contractor, Hebert Brothers and its surety, Fidelity & Casualty Company of New York, that plaintiff's claim is nothing more nor less than one for the rental of manned equipment by the hour and therefore not lienable nor are they liable under the law as established in our jurisprudence and cited hereinabove.
After a careful consideration of the record we do not find that the plaintiff's claim nor the judge's finding of fact are supported by a preponderance of the evidence. On the contrary, the preponderance of the evidence reveals that from time to time, as shown on the itemized account of the claim and from the testimony in the record, the sub-contractor would need certain equipment which evidently he did not own, such as winch trucks, dump trucks, large motor crane, welding machine, small motor crane, air compressor, two mats used for a dragline, and possibly other equipment which it is not necessary to mention. He would call upon the plaintiff by telephone or in person whenever he needed additional equipment for a particular type of work he had to perform and the plaintiff would send his own equipment, fully manned with operators and fuel directly to the job site, and plaintiff would charge the subcontractor for the manned equipment so much per hour. For example, we find on the account:

"2-Winch trucks & operators J. Martinolich, N. Roger @ 4.50 per
hr-ttl 86 hrs $387.00
* * * * * * * * * * *
"Hauling gravel from S.P. Depot to plant site Dump trucks &
operators N. Roger, E Himel @ 2.50 per hr-ttl 48 hrs. 120.00
* * * * * * * * * * *
"Large motor crane & Operator R. Thibodaux @ $10. per hr ttl
26 hrs. 260.00"

These are examples of the method of charges which form the basis of the plaintiff's claim. When the use for which the trucks and drivers were obtained had been finished, they were taken back to the plaintiff's establishment. The plaintiff paid all wages to the labor supplied along with the equipment, all Social Security Payments, furnished the gasoline, oil, tires and any repairs to the equipment.
The subcontractor testified that when he needed equipment he would telephone the plaintiff and tell him what equipment he needed for what kind of work and it would be sent over to the job by the plaintiff, and the subcontractor or his superintendent would tell them where to place the equipment and what to do with it. Under direct examination the subcontractor testified that when he would call for the equipment he would instruct the plaintiff and the latter would instruct the men what to do when they got on the job. However, he also testified when asked:
"Q. Who supervised the work while it was being done?
"A. I was and also my superintendent."
The subcontractor under cross examination, when questioned with regard to the suit of Mr. Melancon which was compromised, testified that he had the same arrangement with the plaintiff as with Melancon, viz., that when he needed a piece of equipment and an operator he would call Melancon and tell him to send over the equipment and an operator and after they got on the job he would tell them what work was to be done and that he and his superintendent *752 supervised them, and that after the work was completed the operator would drive the truck or equipment off the job. He testified that he did not furnish any gasoline for the equipment which he obtained from the plaintiff or Melancon. The equipment furnished by plaintiff was always operated by plaintiff's employees and would stay on the job "as long as we needed them. They would go back and when we needed them on the next pumping station we would call back on them at different times."
The plaintiff in testifying explained his arrangement with the subcontractor as follows:
"Q. How did you come about to do that work?
"A. Well, Clarence Albert would call me up and say, `Nick, I need a motor crane tomorrow and some men out there. I need a welding machine. Send me some men out there. I need a dump truck, an air compressor with some men out there to work on this certain job.' He would call me up when he needed the stuff and I would send it to him."
There was no testimony that there was any contract to do a certain work, nor continuous work, and by no stretch of the imagination could the plaintiff be termed a subcontractor under Albert. The only charge the plaintiff made was by the hour for the manned equipment. The supervision and control of the manned equipment was with the subcontractor while on the job, however, there is nothing to show that the plaintiff could not have recalled his manned equipment at any time he saw fit, without regard to the progress of the work.
Under the above facts, we are convinced that the plaintiff supplied manned equipment to the subcontractor which was under the supervision and control of the latter in the performance of the subcontractor's work.
Counsel for the plaintiff cites the case of Miller v. Bonner, supra, as being applicable and controlling and contends that, even assuming the defendant's position to be correct that it was a rental of manned equipment, the plaintiff was still entitled to judgment in this case under the holding of the Supreme Court in the above cited case.
In Miller v. Bonner, supra, it is shown that the latter entered into a written contract under Act 49 of 1910 with the State of Louisiana through the State Highway Department, and with the Police Jury of the Parish of St. John the Baptist, for the construction of a road. Bonner gave bond with the United States Fidelity and Casualty Company as surety for the performance of the work and for the payment of all workmen and furnishing of materials and supplies. In February 1918 this contract was sublet by Bonner to Miller who in turn gave similar bond as indemnity to Bonner with the Southern Surety Company as Surety.
The Court, of course, held that the bond given by Bonner to the State of Louisiana was a statutory bond, whereas the bond given by the subcontractor, Miller, was a conventional bond and its provisions constituted the law that governed the claim for labor, material and supplies when the Bonner contract, which had been read into the bond, was considered. The Court then considered the Bonner contract and stated:
"The condition of the bond is that Paxton Miller, as principal, `shall pay all sums due on materials and supplies used, and for wages earned by laborers and workmen employed upon the work to be done.'
"Paxton Miller, as principal in said bond, binds himself well and truly to perform Bonner's contract, made and entered into on the 30th day of January, 1918, to construct the St. John the Baptist portion of the New Orleans-Baton Rouge highway, `according *753 to the stipulations recited in said contract, attached and made a part hereof.' The contract, therefore, is read into the bond in this case. It is provided in Bonner's contract that:
"`The contractor shall, any time during the life of this contract, be required within ten days (10) notice, to secure, use and operate, as may be directed, by the state highway engineer, any tools or implements, or supplies, such as road rollers, blade machines, barrows, scarifiers, road hones, road drags, teams, labor, etc., that may be decided necessary for the proper construction and maintenance of any part of the work.'
"`Teams' and `labor' which may be necessary for the proper construction of any part of the work clearly come within the definition of `supplies', as used in the Bonner contract, which Miller and his surety have bound themselves in solido to perform, as these terms do not fall within the category of `any tools or implements' secured, used, or operated in the building of this road."
The court, of course, held that under the conventional bond which provided for the incorporation of Bonner's contract, which in turn provided for securing "teams" and "labor", that such furnishers are entitled to judgment.
Therefore, Miller v. Bonner is not controlling in a case of a statutory bond furnished by Hebert Brothers, the main contractor, to the owner, and an examination of the conventional bond furnished by Employers' Liability Assurance Corporation, Ltd., on behalf of the subcontractor, Albert, is couched in the same language as that of a statutory bond as to its obligations and conditions and such an interpretation under the settled jurisprudence heretofore cited would, of course, defeat plaintiff's action for recovery of monies due for the rental of manned equipment.
Counsel for plaintiff contends that the holding in the case of Childers v. City of Monroe, 10 La.App. 701, 122 So. 135, decided by the Second Circuit Court of Appeal is absolute authority for judgment by the Lower Court in favor of plaintiff. In this case the City of Monroe entered into a contract to build a water and light plant and accordingly the contractor gave bond as surety under Act 224 of 1918. The contract involved the construction of a "clear water basin" and a "secondary settling basin", the building of which necessitated considerable excavations. The principal contractor sublet to one Walker the work of excavating for these basins, for which no bond was required from the subcontractor. The subcontractor employed Childers, plaintiff, to assist in making the excavations, the agreement between them being that Childers should use his teams and laborers to remove the dirt, his compensation being fixed at $7.50 per day for each team and driver and he to pay the drivers. Walker defaulted, leaving a balance due Childers for the excavation work. Childers filed his claim in the mortgage records of the parish, and gave notice to the city, the principal contractor and the surety company of Walker's default. Failing to collect his claim by amicable demand, he brought suit against the city, the principal contractor and its surety, and the subcontractor, Walker, seeking a judgment against them in solido for the amount of his claim together with 10% attorneys fees and recognition of his lien against the water and light plant belonging to the City. All the parties except Walker answered, and issue as to him was joined by default. There was judgment for plaintiff against all parties in solido, with recognition of a lien and privilege in favor of the plaintiff and against the property of the city; the lien being referred to the bond.
On appeal the contention was made that the court erred in holding that Act 224 of *754 1918, governing contracts for public works, extends to and protects claims for rent of mules to subcontractors, the contention being that said act and bonds written thereunder, according to its provisions, protects only those who furnish materials for or perform labor or do work in connection with the construction of such work.
In answering this contention the court stated:
"There is no contention that the contract and the bond in this case were not written in accordance with the provisions of this act; and it is not contended that said contract and bond did not protect those who furnished materials and work for the subcontractor. But counsel contends that bills for teams rented to the subcontractor are not covered by the statute.
"The confusion in this case, we think, has arisen over a misconstruction or a misinterpretation of the contract between the plaintiff, Childers and the subcontractor, Walker. The pleadings and the testimony show that the contract between the two was that Childers should furnish teams and drivers to excavate for the basins, Childers to receive $7.50 per day for each team and a driver. In figuring the compensation which Childers was to receive, it seems that he figured his teams at $5 per day and his drivers at $2.50 per day each. The parties seem to have called this a contract for mule or team rent. But whatever they may have called it, it was in fact a contract to excavate, move dirt in connection with the building of the water and light plant. Childers, the plaintiff, hired his own drivers and put them in charge of his teams, and, with the teams and drivers, the work was done. In other words, Childers did the work and used the teams to accomplish it. Our construction of the contract is that it was no more nor less than a contract to do work, and that plaintiff's claim is fully protected by the contract and bond."
While we can readily see the force of the argument of counsel for plaintiff that the Court held that even under the terms of the statutory bond, the rental of manned mule teams was protected by the contract and bond, if the case is so construed and interpreted it is in conflict with the settled jurisprudence heretofore cited that there can be no recovery under a statutory bond or a conventional bond whose provisions contain the same obligations as a statutory bond for rental of manned equipment. We believe that the court intended and did hold that the plaintiff was a subcontractor of the subcontractor. In other words, that he had entered into a contract to do the excavation, furnish the teams and the labor and supervise and control the work of excavating. The Court stated: "In other words, Childers did the work and used the teams to accomplish it," and, again, "that it was no more nor less than a contract to do work * * *". This case is not cited nor mentioned in the jurisprudence of Louisiana touching upon the question. We do not construe it as in conflict with the settled jurisprudence, for to do so would simply mean that it had been overruled.
Plaintiff's claim in the case at bar for balance due for the rental of manned equipment is not protected by the contract and statutory bond and he is not entitled to a judgment under either as against the owner, contractor or the surety on the bond of the contractor or subcontractor. The City of Thibodaux and Sewerage District No. 1 has complied with all the requirements of the Public Works Act which relieves them of any statutory liability to the plaintiff.
Plaintiff alternatively asks for judgment on quantum meruit. We are in entire accord with the answer to this question by *755 counsel for defendant made in his brief as follows, to-wit:

"NO QUANTUM MERUIT RECOVERY
"Likewise, there is no equitable basis on which Furnisher may recover from Owner.31 It is well settled that the
"31 Furnisher argued below, alternatively, that his recovery against owner could be based on `quantum meruit.' Although the trial court's judgment allowed recovery from Owner, it was not predicated on quantum meruit. However, Furnisher has raised the issue on this appeal, because he makes the same alternative plea in the answer to this appeal.
Public Works Act is sui generis, preempting the field of law on this subject, and therefore it alone provides the exclusive remedies for parties involved in public construction work.32
"32Glassell, Taylor & Robinson v. John W. Harris Associates, Inc., 209 La. 957, 26 So.2d 1 (1946), so held with respect to the Private Works Act (R.S. 9:4801, et seq.): and, in both Decatur and Pigeon-Thomas, note 28, supra, the Supreme Court held that the Public Works act is analogous thereto.
But nowhere in the Act is there any authority whatever for allowing a furnisher who is not in privity with the owner to recover equitably from the owner simply because the owner's completed facility has been benefited by the furnisher's supplies.33 And this
"33 That the Public Works Act is in derogation of common rights creating liens and privileges, and hence must be very strictly construed and not extended by analogy or implication or through considerations of equity, is settled law in Louisiana. See: American Creosote Works v. City of Natchitoches, 182 La. 641, 162 So. 206 (1935); Rester v. Moody & Stewart, 172 La. 510, 134 So. 690 (1931); Red River Construction Co. v. Pierce Petroleum Corp. 165 La. 565, 115 So. 752 (1928).
Court already has expressly refused to allow such a recovery by a furnisher not in privity with the ultimate beneficiary of the completed construction.34
"34 Terrebonne Lumber & Supply Co. v. Favret, 2 So.2d 256, 258 (La.App. 1-1941)."
There is no privity of contract shown by this record between Hebert Brothers, the contractor, and the plaintiff, for as stated by appellants in their brief, the subcontractor, Albert, was an independent contractor acting for himself when he made his contract with the plaintiff for the rental of his manned machinery. He was not acting as agent for Hebert Brothers. Therefore there can be no recovery by plaintiff from Hebert Brothers on any contractual relationship as there was none. There is no statutory liability in the Public Works Act which imposes personal liability on Hebert Brothers for the claim of the plaintiff and, in any event, Hebert Brothers, like the City of Thibodaux and Sewerage District No. 1, were protected from personal liability when the liens were properly cancelled by the lien-release bond.
The surety on the bond of Hebert Brothers, Fidelity and Casualty Company of New York, is not liable to the plaintiff for "manned equipment rentals", as liability for such charges are not contemplated or imposed by the statute on the sureties of the contractor who furnished a statutory bond. See authorities heretofore cited which hold that a Public Works statutory surety is not liable for charges for "manned-equipment rental" as they are not permanently placed or concerned in the actual constructed facility itself.
Likewise, the plaintiff is not entitled to recover against the Employers Liability Assurance Corp. Ltd., as surety on the bond of the subcontractor, Albert, although this bond would be considered as a conventional bond but as its conditions and obligations clauses are identical to the language of the Public Works Act under the authority of Bickham v. Womack, supra, this conventional bond would be interpreted as if it were statutory. When so interpreted under the jurisprudence we must conclude that plaintiff's "Manned-equipment rentals." would not be covered by this bond and therefore Employers Liability *756 Assurance Corporation, Ltd., would not be liable to the plaintiff.
For the above and foregoing reasons the judgment of the District Court is annulled, set aside and reversed, and it is now ordered that there be judgment in favor of defendants-appellants herein and that plaintiff's suit be dismissed at his cost.
Reversed.