OVERTON, J.
The West Louisiana Bank was selected as depository for the funds of the parish of Vernon by the police jury of that parish. Section 5 of Act 205 of 1912 requires that the depository selected by the state, or by any of its political subdivisions or boards, shall furnish, as security for deposits made, bonds of the United States, or of its colonial possessions, or unmatured bonds of the state of Louisiana, or of any legally organized subdivision or board thereof, or shall furnish, in lieu of such bonds, an indemnity bond of a duly authorized surety company, conditioned upon the safe-keeping and return of the amounts deposited and the payment of the interest thereon; the amount *248 of the bond to be arrived at in a manner indicated by the statute. The West Louisiana Bank elected to furnish an indemnity bond to secure the parish of Vernon, and accordingly furnished one, signed by the New Amsterdam Casualty Company, as surety, in the sum of $7,500, and another, in an equal amount, signed by another surety company. The bond signed by the New Amsterdam Casualty Company, which is the, only bond involved in this litigation, contains the following stipulations, to wit:
“If the amount of the obligee’s deposit at the time of the default of the ‘principal’ does not exceed the amount of this bond, the ‘surety’ shall be subrogated to all rights of the ‘obligee’ against the ‘principal’ and any other person or corporation as respects such default; and the ‘principal’ and the ‘obligee’ shall execute all papers required, and shall co-operate with the ‘surety’ to secure to the ‘surely’ such rights.
“If the amount of the ‘obligee’s’ deposit at the time of the default of the ‘principal’ exceeds the amount of this bónd, the ‘surety’ shall be entitled to share with the ‘obligee’ the amount of any dividend or payment received from the ‘principal’ in the proportion that the amount of this bond bears to the total amount of the deposit at the time of the default of the ‘principal.’ The ‘surety’ shall be subrogated in the sáme proportion to, all the rights of the ‘obligee’ against any other person or corporation as' respects the default on the part of the ‘principal’; and the ‘obligee’ shall execute all papers required, and shall co-operate with the ‘surety’ to secure to the ‘surety’ such rights.”
The West Louisiana Bank suspended payment and closed its doors on or about February 6, 1922, while the above bond was in force. At the time of the suspension of payment, there was on deposit in the bank the sum of $19,343.87, belonging to the parish of Vernon, and kept in the name of Charles T. Davis, parish treasurer, which sum constituted the general fund of the parish. Hence, when the bank failed, it had on deposit, belonging to the parish, a sum, which not only exceeded the amount of the bond signed by the New Amsterdam Casualty Company, but which exceeded the amount of both , bonds given by the bank.
When the bank failed, the parish notified the surety company of the failure, and in due course that company tendered the parish a check for $7,500, the amount of the bond, and also an instrument, the purpose of which was to subrogate the company to the rights of the parish against the bank, agreeably to the terms of the bond, quoted above, and demanded that the parish sign the instrument tendered, and make the subrogation accordingly. The parish refused to execute thg subrogation demanded, and declined to accept the check upon condition that it should make the subrogation. The surety company refused to make payment unless the parish signed the act of subrogation, and as'a result this suit followed.
The purpose of the suit is to recover judgment against the bank and the casualty company in solido for the amount of the bond, with 5 per cent, per annum interest thereon from March 6, 1922, until paid, and 10 per cent, attorney’s fees.
The chief question to be determined, as presented by the parties litigant in their pleadings, and as stated by their counsel in argument, is whether effect should be given to the stipulations in the bond, relative to the subrogation there provided, which permits the surety, after paying the bond, to share in certain proportions with the parish all payments made it by the bank, while there still remains a balance due the parish by the bank. V
As there is an amount due the parish by the bank, in excess of both bonds given by the latter to secure the former, it is a matter of importance to the parish that no effect be given those stipulations, for if they should be held to be properly part of the bond, and as such effective and enforceable, then the casualty company will share, in the proportion fixed in those stipulations, all payments made by the bank to the parish on account of *250 the indebtedness due, which might and probably will result in destroying the chances of the parish to collect the balance remaining after the payment qf both bonds by the sureties thereon.
The contention of the parish is that the bond in question is a statutory bond; that the police jury, the governing body of the parish, was without right to make a covenant with its depository and its depository’s surety» not contemplated by the statute requiring the bond; that, as the bond is a statutory one, the statute, requiring that it be given, must be read into the obligation undertaken by the surety and the bank, and that any qualification tending to limit the obligation required of the surety, under the statute, should be disregarded, and that every obligation, necessary to be supplied, under the statute, should be read into the bond.
The contention of the casualty company is that, if the covenant relative to subrogation be stricken from the bond, the result' would be that a new and different contract would be substituted thereby for the one. entered into by the company; and hence that the striking out of the covenant is not permissible. The company takes the position that the bond is enforceable only as a conventional bond and not as one that is statutory.
The bond on its face does not mention or refer to any statute. However, it was given to secure a political subdivision of the .state in depositing its moneys. At the time the bond was given, and at the time the bank failed, there was in force in the state a general statute (Act No. 205 of 1912), directing each parish to select a bank as its fiscal agent, and making it the duty of each parish to require security of the bank, thus selected, for the safe-keeping and return of the deposits made by it, and the payment of the interest thereon. The casualty company was charged with knowledge of that statute; and the inference is that, when it signed the bond as surety, it knew that the bank was furnishing the bond to enable it to qualify under the statute, as the fiscal agent of the parish, and that the company, in signing as surety, did so to enable the bank to so qualify. The presumption is, therefore, that the bond was signed, under the statute, by the bank and the casualty company, qnd with the requirements of the statute in view.
In Corpus Juris, vol. 9, § 56, it is said:
“The law at the time of the execution of a bond is a part of it; if it gives to the bond a certain legal effect it is as much a part of the bond as if in terms incorporated therein. "Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute and the construction given to the statute by the courts. Such a^ bond must be given the effect which in reason must have been intended by the statute. Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it. Although the terms of the bond may bear a broader construction, the liability of the parties will be confined to the meashre of liability as contemplated by the law requiring the bond; but it will not be assumed that the legislative enactment was intended to impart to an instrument an effect different from that intended by - the parties.”
And again in volume 19, Corpus Juris, § 59, it is said, among other things, that:
“Statutory provisions relating to depositaries should be read in connection with the bond, especially where there is express reference thereto. Additional conditions to those provided for by the statute which tend to limit the liability of the surety will be treated as surplusage.
And, in Macready and Burke, Executors v. Schenck, 41 La. Ann. 456, 6 South. 517, where a bonjl sued on was made payable to the judges of the civil district court instead of to the succession representatives, as provided by law, the court, in passing upon the de *252 fense, urged by sureties, based upon that defect in the bond, said:
“Under the well-settled doctrine that where a bond is given under the authority of a law, whatever is included in the bond and which is not required by the law, must be read out of it, and, whatever is not expressed and ought to have been incorporated, must be read as if inserted into it, it follows that the words found in the bond by which it is made payable to the judges of the civil district court, must be left out, and the words to the succession representatives, must be deemed as embodied in their place.”
See, also, Slocomb v. Robert, 16 La. 173.
 There is nothing in the statute, under which the bond, in the case at bar, was given, that authorized the provision in question. In fact that provision is in conflict with the statute, for the latter clearly contemplates that the surety shall not have any share in the payments made or that may be made by the bank to the parish on the indebtedness arising from the deposits made by the latter, so long as there remains anything due it, notwithstanding the payment of the bond by the surety, whereas the provision as to subrogation, quoted above, expressly provides to the contrary. The parish was without power to accept such a provision, and therefore it is not enforceable. As the bond was given under the statute, and as the provision is in conflict with it, the provision must be read out of the bond, and the bond enforced without it. Since the bond was given under the statute to enable the bank to qualify as the fiscal agent of the parish, and therefore must conform to the law under which it was given, the presumption is that the surety, in signing the bond, intended that any provision in it, in conflict with the statute, and hence not enforceable, should be deemed as not written. Therefore it cannot be said that, in disregarding the provision, we are, in effect, creating an obligation different from the one intended.
The parish, as we have heretofore stated, has sued for 10 per cent, attorney’s fees. The statute, in section 11 thereof, provides for a 10 per cent, penalty, but does not mention attorney’s fees. Aside, however, from that difference, the statute, we think, in directing that suit be instituted on the bond, in case of default, to recover the amount of the deposits and accrued interest, and a penalty of 10 per cent, on the amount sued for, vests the courts with reasonable discretion to determine whether or not the penalty should be allowed under the facts of the case, and we think that when the case presents a serious issue, as is here the case, the statute does not contemplate the infliction of the penalty.
The judgment of the lower court allows the 10 per cent, penalty, as attorney’s fees. Therefore the judgment will have to be amended in this respect.
For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by rejecting said demand for 10 per cent, attorney’s fees, and that in all other respects it be affirmed; the costs of the appeal to be borne by the appellee, the parish of Yernon, and those of the lower court, by the defendants, in solido.