Plaintiff in this case appeals from a judgment of the district court which sustained an exception of no right or cause of action filed on behalf of the defendant Western Casualty and Surety Co. and dismissed his suit as to that defendant, at his costs. The other defendant in the suit, Floyd Monroe Mizell, apparently had left the Parish of Washington and it was impossible to obtain service on him. Issue was never joined as to him and for the time being he is not a party to the suit.
Mizell was engaged during the month of January, 1947, in a business operated under the name of Mizell Laboratory. He was a duly licensed and bonded termite contractor and had qualified as such under the provisions of Act. No. 124 of 1942 which created the Louisiana Pest Control Commission. Under the provisions of that act, a contractor operating such business is required to furnish a bond guaranteeing that he shall honestly conduct his business, which bond has to be made in favor of the chairman of the commission. The defendant, Mizell, furnished such a bond with the co-defendant, Western Casualty Co., as surety thereon.
In his petition plaintiff alleges that on January 25, 1947, he entered into a contract with Lymann B. Mattox and Lois C. Mattox to purchase their home located one mile west of Bogalusa on the Franklinton Highway, for $11,000 cash, and that as a part of their agreement he deposited $1,000 with a real estate agency handling the deal, pending the consummation of the sale, which $1,000 was to become part of the purchase price. That the said agreement also purvided that 'termite inspection is to be made, and if conditions are not found satisfactory, agreement must be made to remedy condition."
He then alleges that because of that provision in the agreement, vendor, Lymann E. Mattox consulted Mizell about a termite inspection and treatment of the premises and on January 25, 1947, he entered into a contract with Mizell who agreed that for the consideration of $160 cash he would treat the Mattox home and would "eradicate all subterranean termites therein and also non-subterranean termites in open construction therein during a period of two years from date" and that he would also inspect the premises regularly and that the contract itself stated that "no repairs were needed." The contract further provided that work would commence on January 27, 1947 and that Mizell would prosecute it in a thorough and workmanlike manner, under proper and adequate supervision and complete it all without delay. Whilst the agreement for termite eradication and inspection was made between Mizell and Mattox it was assigned to the plaintiff as purchaser of the property by a provision written across the face by Mizell and signed by him.
Plaintiff alleges that it was reasonable for him to rely upon the provisions of the contract between Mizell and Mattox and especially that portion which stated that no repairs were needed, from which he concluded that the house had been or would promptly be freed of termites and that if there were any present, no damage had been done which would require repairs to be made. Acting on all of these assumptions he accordingly closed the sale and obtained title to the property by recorded title, but that upon taking possession he immediately found that the house was heavily infested with termites. He then promptly called Mizell's attention to the condition and demanded that he remedy the same in accordance with his contract. This Mizell refused to do or to satisfy him in any manner and he further alleges that as a result of his failure and refusal to faithfully and *Page 54 
honestly comply with the terms of the contract he has suffered extensive damage as a result of the infestation; that it became necessary for him to tear out a large part of the flooring of the house and repair the same in order to prevent further damage and that it also became necessary for him to retain the services of another termite contractor in order to properly treat the building and eradicate the termites therefrom.
For what he alleges was the gross negligence of Mizell in complying with the terms of his contract, and also to honestly and faithfully perform the same, he has suffered damages in the sum of $705.56, all itemized in detail in his petition. He finally alleges repeated demands upon Mizell and his surety on his bond without avail and accordingly prays for judgment against them both, in solido.
Plaintiff annexed a certified copy of the bond executed between defendant Mizell and the Western Casualty and Surety Co. as surety, to his petition and also his contract to purchase the property from Mattox and the termite contract executed between Mizell and Mattox. Across the face of the latter contract there is written at the top, "transferable on change of owner" and that is signed "F. M. Mizell."
After the defendant surety company had filed its exception of no cause or right of action, plaintiff filed a supplemental and amended petition in which he alleges that in addition to operating and conducting his business under the provisions of Act No. 124 of 1942, he also operated and conducted the same under the regulations of the Louisiana Pest Control Commission and annexed to his petition a certified copy of the rules and regulations of that commission which became effective April 21, 1943. He also alleged in this supplemental petition that he had paid Mizell the sum of $160 under Mizell's contract with Mattox, which amount he is also entitled to recover and consequently he prays for judgment in the sum of $865.56 instead of $705.56.
The filing of the supplemental petition did not have the effect of meeting the issue that was presented under the exception of no right or cause of action and it was upon trial and submission of that exception later on, that the trial judge rendered judgment in favor of the defendant surety company and rejected plaintiff's demand.
The issues that are presented in the exception are, in a great measure, the same as were presented and discussed by this court in the case of Parkerson v. Home Protection Service, La. App, 24 So.2d 256. The law creating the Louisiana Pest Control Commission is Act No. 124 of 1942; the one with which the court is concerned in this case. A prior act, Act No. 141 of 1936, had created the Horticultural Commission. It was the law applicable in the Parkerson Case, supra. The purpose of both acts was the same, but, it is urged, by counsel for plaintiff, that there are some material differences in some of their provisions, a very important one being with regard to the bond to be furnished by the contractor who is to engage in work of pest control eradication. They contend that under the act of 1936 it was optional with the contractor whether he would guarantee his work and it became necessary therefore for him to make particular reference to the authority under which he contracted and to the bond which secured his faithful performance of his contract. Under Act No. 124 of 1942, counsel contend that the contractor is given no discretion either by the terms of the act itself or by the rules and regulations of the Louisiana Pest Control Commission and that to the contrary he is obligated under the rules and regulations adopted, to have a contract in writing and a bond to guarantee its performance.
To the extent that the act of 1942 requires a contract in writing in which the contractor shall guarantee all of its terms for a period of two years, counsel may be correct. The only provision relating to a bond is found in Sec. 6 of the act and that has reference to the bond of $2,000 which the applicant for a license to engage in the work of pest control must furnish to the commission, and the only condition of that bond is "that the principal therein named shall honestly conduct said business; * * *." The provision relating to the contract to be entered into between the licensed pest control operator and the one engaging his services, is found in a separate section of the *Page 55 
act, Sec. 7, and the only requirement is that such contract must be in writing and its terms must be guaranteed by the contractor for a period of two years. It contains nothing about a bond but does provide a rather severe penalty for failure by the contractor to carry out its provisions.
Whilst it is true that the act authorizes the Pest Control Commission, under Section 1, to make rules and regulations covering the qualifications of applicants for licenses and the commission did, effective April 23, 1943, promulgate its rules, among which there is one relating to the bond to be furnished, requiring in addition to the condition that the licensee shall faithfully and honestly engage in his profession, the condition that he shall "carry out all contracts entered into", we doubt the commission's authority to exact this additional condition in the bond.
That was an important point on which the court did not entirely agree in the Parkerson Case, supra. However, regardless of the commission's right in that respect, the majority of the court decided that case on the point that there had been two bonds executed by the contractor, one the license bond required by the statute then in effect, Act No. 141 of 1936, and the other, the "contract" bond, as it was referred to, required by the rules of the Commission, and irrespective of its right to exact such condition, the surety, having obligated itself with full cognizance of, and in compliance with the commission's regulations, was held liable thereunder to anyone who had contracted with the principal, with reference to such bond. It is significant to note that with regard to certain items included in the demand made in that case the court sustained the exception of no cause of action for the reason that with respect to the agreements covering those items, there was nothing to show that the service had been guaranteed nor was any reference made to any bond or surety. In this connection, it is to be observed that plaintiff's petition in this case is likewise void as to any allegations to that effect. The only reference made in either the original or the supplemental petition, to any bond, is that Mizell, the licensed Pest Control Contractor, executed a bond "as required by the above mentioned act" (Act No. 124 of 1942) in the sum of $2,000, with himself as principal and Western Casualty and Surety Co. as surety. A copy of the bond referred to is annexed to the original petition and shows plainly that it was executed in compliance with Section 6 of Act No. 124 of 1942, all as recited in the bond itself. The amount of $2,000 is in accord with the provisions of that section of the act and it contains the condition required therein that the principal shall honestly conduct his business. Whilst reference is made to Section 7 of the act containing the guarantee clause, and the condition of the bond includes a guarantee of contracts, the commission was without authority to insert that additional condition because no bond is provided for under section 7 of the Act. As indicated by the bond itself, it was executed in compliance with the terms of Act No. 124 of 1942; as such it was clearly a statutory bond which could neither add to nor detract from the terms of the act. That is a well recognized rule of construction of statutory bonds.
In construing a condition which was not authorized by the statute under which a bond had been executed, the Court, in the case of Davis v. West Louisiana Bank, 155 La. 245, 99 So. 207, 209, stated: "There is nothing in the statute, under which the bond, in the case at bar, was given, that authorized the provision in question. * * * The parish was without power to accept such a provision, and therefore it is unenforceable. As the bond was given under the statute, and as the provision is in conflict with it, the provision must be read out of the bond, and the bond enforced without it." From a companion case, Davis et al. v. West Louisiana Bank et al., 155 La. 252, 99 So. 210, 211, we quote this statement: "The bond was given by the defendant bank in pursuance of the requirements of the fiscal agency laws of the state (Act No. 205 of 1912 and its amendments). It is therefore a statutory bond, which was the only kind of bond the police jury was authorized to accept. The statute must be read into the bond. Superadded stipulations must be disregarded. Necessary obligations which have been omitted must be supplied." See *Page 56 
also Louisiana Highway Commission v. McCain, 197 La. 359,1 So.2d 545; John H. Murphy Iron Works v. United States Fidelity Guaranty Co., 169 La. 163, 124 So. 768.
Another reason which leads us to believe that the statute did not contemplate giving the commission the right to exact a bond to guarantee contracts is because section 7 of the act which requires a contract in writing with a two year guarantee by the pest control operator provides a criminal penalty, in addition to the revocation of his license, for failure to comply with these provisions. He can be fined as much as $200 and imprisoned for as long as 90 days for violation of either the provision to execute the contract in writing, or the one to carry out its guarantee. These in themselves are rather harsh measures to which he can be subjected and we are of the opinion that if it had been intended moreover that he furnish a bond to protect the property holder who employed him, the statute would have so stipulated.
The trial judge seriously questioned the right of the Pest Control Commission, under the authority granted to it by Section 1 of the act, to make rules and regulations under which it could add conditions to the bond required by Section 6. He was of the opinion however, that even though such authority be conceded, the surety on the bond in this case cannot be held thereunder because the contract between Mizell, the Pest Control Operator, and Mattox, the property owner, was entered into without any reference whatever to the bond itself. In this, we think he is right. We touched on this phase of the matter before and pointed out that in the Parkerson case, supra, that was the reason for which the majority opinion held that the exception of no cause of action was good with regard to certain of the items claimed. Whilst it may be that under the maxim that everyone is presumed to know the law, a presumption may arise that parties entering into a contract which is governed by the provisions of certain statutes, they do so with reference to a bond that is required in the statute, no such presumption attaches with regard to a bond that is not so required or authorized. In this case therefore whilst Mattox, the property holder who contracted with Mizell, and the plaintiff, assignee under that contract, may be presumed to have entered into their agreement with reference to the bond required by section 6 of Act No. 124 of 1942, they cannot be presumed to have contracted with reference to any conditions in the said bond which were not required or authorized by any other provisions of that act.
Under any view to be taken of the issues presented in the case, we believe that the judgment appealed from is correct and it is therefore affirmed at the costs of plaintiff, the appellant.