Plaintiff sued the Washington Parish Live Stock Commission Company which, he alleges, is owned and operated by P. L. Cobb and his wife, Mrs. Beatrice Hughes Cobb, the said P. L. Cobb and Mrs. Beatrice Hughes Cobb, and also the Century Indemnity Company, on an obligation arising out of the sale of certain live stock and for which a check in the sum of $1023.47 had been given in payment but was returned unpaid. Whilst all defendants were cited and proper service was made on all of them, only the Century Indemnity Company has made an appearance in the suit and that was to file an exception of no right and no cause of action which was sustained in the trial court. From a judgment rejecting the demand made and dismissing the suit as to that defendant, the plaintiff has taken and perfected this appeal.
In its petition plaintiff alleges that the Washington Live Stock Commission Company was compelled by statute to post a bond with the Louisiana State Live Stock Sanitary Board, which bond was furnished by the defendant, Century Indemnity Company, indemnifying them as well as all others who sold cattle to Washington Parish Live Stock Commission Company, from any loss occasioned by reason of the sale *Page 147 
on commission or consignment, or as broker and trustees, or violation of any trust. It is then alleged that on December 1, 1947, petitioner sold to Washington Parish Live Stock Commission Company, P. L. Cobb and Mrs. Beatrice Hughes Cobb, 19 head of cattle for the purpose of resale at the Franklinton barn and was paid by check in the amount already stated, which check, as also stated before, was returned unpaid and remains unpaid despite repeated amicable demand. After setting out that it is the owner and holder of the said check which represents the value of the cattle that were sold at the barn, within the provisions of the clauses of the bond posted by Century Indemnity Company, plaintiff seeks to hold that company on the ground that it had indemnified it and others dealing with the Washington Live Stock Commission Company, for a valuable consideration, from the loss it had sustained.
Plaintiff annexed the check, on which the demand is predicated, to its petition. Upon examination it is found to be a check signed as follows: "P. L. Cobb, by Lewis Edwards." A copy of the bond posted by the defendant, Century Indemnity Co., is also filed in the record. It is shown to be a bond in which Mrs. Beatrice Hughes Cobb appears as principal and Century Indemnity Co., as surety. The condition of the bond is as follows: "The condition of this obligation is such that if the above bounden Mrs. Beatrice Hughes Cobb shall well and faithfully discharge and perform the duties and obligations imposed by Act No. 104 of 1944 upon him or incumbent on him as market agency, or market dealer, customarily handling not less than five nor more than twenty-five head of live stock per week at his establishment located at Franklinton, Louisiana, within the State of Louisiana, then in such case the above obligation shall be null and void; otherwise same shall remain in full force, virtue and effect under the provisions of said Act and other laws of the State of Louisiana."
The exception is based on three separate grounds: The first is, taking it for granted, as alleged, that the Washington Parish Live Stock Commission Co. is owned and operated by P. L. Cobb and his wife, and presumably therefore is owned by the community existing between them, the obligation sued on can only be enforced against the husband as head and master of that community. The principal whose obligations the surety company indemnified in the bond is Mrs. Beatrice Hughes Cobb who did not sign the check and cannot be held liable for its payment. The second ground is that the bond, being a statutory bond, is limited by the provisions of the statute under which it was given, namely Act No. 104 of 1944, and under the terms of that act, nothing like the obligation sought to be enforced is contemplated. Thirdly, it is urged that the check, having been signed through some one else than the drawer himself, it was necessary for the petition to have shown that some form of agency or power of attorney existed in favor of the party who signed it for him.
We are of the opinion that all three points urged in favor of the exception are good. The trial judge did not assign reasons for judgment and we do not know therefore whether he sustained all three of them or only one or two. One of course was all that was necessary to decide the case on and since we believe that the second we have mentioned is the most convincing, we will dispose of it on that ground.
Act No. 104 of 1944, under the terms of which the bond in this case was posted, is intended to regulate the business of buying or selling live stock. It provides that all persons, firms, corporations and or associations, acting as Market Agencies or Dealers, as those terms are defined in the act itself, when engaged in the business of buying and or selling livestock "either at a public stock yard or at a privately owned sales pen(s) or concentration point, or on a commission basis, shall secure an annual permit from the Louisiana State Live Stock Sanitary Board, for the privilege of conducting such business, * * *." By the terms of Section 4 of the act, such persons, firms, etc. "conducting public live stock sales shall keep complete records of all sales and purchases for each period of twelve months. The said record shall consist of the name of seller; the number *Page 148 
of the sales tag of the animal; the weight and price of the animal and the name of the purchaser. * * *" Sec. 5 is the one dealing with the bond requirement and it provides that "every Market Agency and Dealer, shall on or before the date of commencement of operations, execute and thereafter maintain, or cause to be executed and maintained, a bond payable to the Secretary and Executive Officer of the Louisiana State Live Stock Sanitary Board for the use and protection of live stock producers and or shippers to secure the performance of their obligations incurred as such Market Agency or Dealer, and shall immediately file or cause to be filed with the Secretary and Executive Officer of the Louisiana State Live Stock Sanitary Board, a fully executed duplicate of such bond. * * *"
It is clear that the act was intended to regulate the business of buying and selling of live stock either at public stockyards or privately operated pens or concentration points; or, if at any other place, on a commission basis. It was not intended, we are sure, to apply to such purchases of live stock as was made in this case where the market agency or dealer goes to a man's farm or ranch, buys so many head of cattle from him and pays cash for them. We doubt very much that a person could induce a surety company, even at a handsome premium, to post a bond guaranteeing all the obligations incurred by him in such transactions. Certainly the statute does not contemplate the posting of such a bond. The only bond required is one to secure the performance of a "Market Agency or Dealer," as those terms are defined in the Act, of conducting his business as such, under the provisions of the statute. Counsel for plaintiff would have the words "Market Agency or Dealer" taken in their general and broad meaning and in that way, they contend, the bond covers and protects such a transaction as the one in this case. But in view of the well defined meaning of those two terms, as appears in the act, their general meaning cannot be applied. As restricted in the definitions given, the terms refer to such persons, firms, etc., only as do business in selling and buying live stock in commerce or on a commission basis, either at a public stockyard or a privately owned and operated sales pen or concentration point. The bond in this case having been posted in conformity with the provisions of the act, is strictly a statutory bond and as such is controlled and restricted by the terms and provisions of that act. Davis v. West Louisiana Bank, 155 La. 245, 99 So. 207; Davis v. West Louisiana Bank, 155 La. 252, 99 So. 210; John H. Murphy Iron Works v. U.S. Fidelity Guaranty Co., 169 La. 163,124 So. 768.
The judgment appealed from is affirmed at the costs of plaintiff, appellant herein.