KNOLL, Justice,
dissenting.
IJ disagree with the majority’s finding failure to comply with the notice and re-cordation requirements of La. R.S. 38:2247 does'not affect the right of a subcontractor to proceed directly against' the surety on the bond.[1] For the following reasons, I respectfully dissent. Indeed, to the contrary, I find the surety is immune from suit unless the subcontractor gives notice and recordation as required under the Public Works Act (“PWA”), the provisions of which must be strictly construed. The majority clearly errs as a matter of law and reaches its result by broadly construing, notwithstanding it recognizes the statute requires strict construction, and misinterpreting the PWA.
As the majority correctly -notes, the issue in this case concerns a subcontractor’s direct right of -action on the bond against the surety to which La. R.S. 38:2247 provides:
Nothing in this Part shall be construed to ‘deprive any claimant,' as defined in this Part and who has complied *308 with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part, provided that said action must be brought against the surety or the contractor or both within one year from the registry of acceptance of the work or of notice of default 12of the contractor; except that, before any claimant having a direct contractual, relationship with a subcontractor but no contractual relationship with the contractor shall have a right .of action, against the contractor or the surety on the bond furnished by the contractor, he shall in addition to the notice and recordation required in R.S. 38:2242(B) give written notice to. said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and 'the name of the party to whom the material was furnished or supplied or for whom the labor or service was. done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana. (Emphasis added). amount due, and record a sworn statement thereof with the Recorder of Mortgages of the Parish in which the work is done, or being done, provided that the said 45 days shall not being to run until the said authorities shall record in the mortgage office of the parish in which the work was done as acceptance of the work, or notice of the default of the contractor or subcontractor, as the case may be; provided further that nothing in this act shall be so construed as to deprive any person or claimant within the terms of this act of his right of action on the bo[nd], which right shall accrue at any time after the maturity of his claim.
Clearly, La.. R.S. 38:2247 expressly reserves as well as grants the claimant (subcontractor) a direct right of action on the bond against the surety, provided he first complies with the notification and recor-dation requirements of La. R¡S. 38:2242(B).
The recognition of this direct action has been |n the PWA since its inception, providing in Section 3 of Act 224 of 1918: “nothing in this act shall be so construed as to deprive any .person or claimant within the terms of this act pf his right of action on the [bond], which right shall accrue any time after the maturity of his claim.”[2] Notably in Act 16 of 1962, the Legislature amended La. R.S. 38:2247, imposing the one-year prescriptive period .for suits on the bond: ,
[^Nothing ⅛ this Part shall- be construed to deprive-any person or claimant within the terms of this Part of his right of action on the contractor’s bond which shall accrue at any time after-maturity of-his claim, which said action must be brought against the surety and/or the contractor within one year from the registry of acceptance -of the work or of notice of default of the contractor.
The Legislature stated its purpose in enacting Act 16 was “[⅜ amend and re-enact Section 2247 ... to define the rights of persons or claimants to have or bring a *309 right of action against a contractor or the surety.” By. expressly defining and limiting the right of action, the Legislature brought the claimant’s direct action on the bond against the surety squarely within the protection of the PWA.
The Louisiana, Practice Series: Louise ana Construction Law § 13:14 provides:
The Louisiana Public Works Act contemplates that if there are unpaid claims at the expiration of forty-five days after recordation of acceptance or default, the public body can file a concursus proceeding, citing'all claimants, the contractor ánd the surety on the bond, and requiring them to assert whatever claims they have against one another. If the public body does not file such a proceeding, any of the unpaid claimants may do so. In these proceedings, all.claimants can assert their claims against the surety and the contractor, and those claims are paid in preference to any claims of the governing authority.
As a practical matter, the concursus proceeding is very seldom used because claimants have a direct right of action against the contractor and the surety on the bond. This action can be filed any time after maturity of the claim, rather than requiring that the claimants wait for forty-five days' after acceptance of the entire project, which .in many cases could occur long after the claim matures.
It further provides:
The Public Works Act also provides a separate .remedy, for claimants against the contractor and .its surety who have complied with notice and recordation requirements of La. R.S. 38:2242(B). If the claimant is a materialman or laborer, this separate suit must be, filed by the claimant against the contractor or the surety within one year after recordation of acceptance or notice of default. The Louisiana Supreme Court has held that a subcontractor’s, suit-,is also governed by the one year prescription period La. R.S. 38:2247.
Id. qt § 13.11.
14As authority, the authors' cite to La. RiS. 38:2247 and Honeywell, Inc. v. Jimmie B. Guinn, Inc., 462 So.2d 145, 148 (La.1985) in which this Court, with Justice Marcus as organ, interpreted a previous version of- La. R.S.. 38:2247, which provided:
Nothing in this • Part ■ shall- -be construed to deprive any person or claimant within the terms-of this Part of his-right of action on the contractor’s bond which 'shall accrue at any timé after maturity of his claim, which said action -must be brought against the surety or'the'••contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor; except.. that before any person.. having a direct contractual - .relationship with a subcontractor but no contractual relationship with the contractor shall .have a right of action against the contractor or the surety, on the.bond furnished by the contractor, he shall record his claim as provided in R.S. 38:2242;or. give written notice to said contractor within forty-five days frpm the recordation, of the notice of acceptance by the owner, of the work...:
The Court concluded:
... an unpaid subcontractor having*' a direct contractual relationship with, the contractor ¡may sue on'the-contractor’s bond without 'filing -and recording a sworn claim or giving written notice to the contractor'. -Although the 'action against the contractor is subject -to the ten-year prescriptive period ordinarily applied to actions in contract, La.Civ. Code art. 3499, the action against- the surety . on.- the bond must be brought within; one year from- the registry - of *310 acceptance of the work by the governing authority_
Honeywell, 462 So.2d at 148.
In what can only be logically explained as action taken in response to the Honeywell holding, the Legislature immediately enacted Act 244 of 1985, amending La. R.S. 38:2247 tó provide, as it presently does, that “Nothing in this Part shall be construed to deprive any claimant ... who has complied with the notice and recor-dation requirements of R.S. 38:2242(B), of his right of action on the bond.” It follows, therefore, where compliance with the notice requirements had not been necessary in order to proceed on the bond, the amendment evidences |Ba specific as well as explicit legislative intent requiring compliance with the notice requirements in order to do so, effectively “legislatively overruling” Honeywell.
Read this way, the specific language of La. R.S. 38:2247 requires compliance with the notice and recordation requirements of La. R.S. 38:2242(B) in order to proceed via ordinaria' against the surety “on the bond.” Thus, a subcontractor/claimant to preserve his direct right of action on the bond against the surety must: (1) “after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done,” and (2) file suit “against the surety or contractor or both within one year from the registry of acceptance of the work or of notice of default of the contractor.” La. R.S. 38:2247. -
The Legislature went one step further in Act 244 by adding a provision to La. R.S. 38:2241(0), providing as it still does today: “Sureties and contractors executing payment bonds for public works- contracts under this Part shall be immune from liability for or payment of any claims not required by this Part.” Reading the term “claim” in pan materia with the definition of “claimant” contained in La. R.S. 38:2242 leads to the most reasonable conclusion that claim means “money ... due pursuant to a contract ... in the construction ... of any public works.” Clearly, if a claimant is seeking money due pursuant to his public work contract from the surety bond, his direct right of action against the surety on the bond is governed exclusively by the PWA and its notice/recordation requirements, otherwise the surety is “immune from liability ... or payment of any claims.” La. R.S. 38:2241(0).
| ^Nowhere does the majority opinion address this key provision in the PWA — the immunity granted the surety under La. R.S. 38:2241(0) — , which renders the majority’s analysis clearly erroneous. A proper statutory analysis would address the immunity provision, which the surety, Ohio Casualty, is urging in this case. The immunity provision clearly grants Ohio Casualty immunity because Pierce Foundation did not follow the notice and recordation requirements before (or even after) it filed suit against Ohio Casualty. By failing to address the immunity provision in the PWA, the majority reaches a flawed interpretation.
The majority randomly dismisses the mandatory requirements of notice and re-cordation and states: “We disagree with this holding, and find -that where the subcontractor fails to comply with the notice and recordation requirements of La. R.S. 38:2242(B), the subcontractor loses his privilege against the funds in the hands of the public authority, but the failure to comply does not affect the right of the subcontractor, in contractual privity with *311 the general contractor, to proceed directly against the contractor and its surety.” Op. at p. 304. This new twist in misinterpreting the PWA is nothing more than legislating from the bench by declaring “the subcontractor loses his privilege against funds” for failing to comply with the PWA. Nowhere does the PWA proclaim this. Moreover, the statement as to the subcontractor’s privity of contract with the general contractor is misplaced. The contract between these two is not at issue. Importantly, there is no contract between the subcontractor and the surety. The issue before us does not concern contractual obligations, but rather how a subcontractor can make a claim for payment on the bond under the PWA dirébtly against a statutory surety when the general contractor has gone “belly-up.”
The majority opinion further fails to address the strong policy consideration of ensuring proportional payment of all claimants, which is the primary purpose of |7the PWA, by requiring the queuing of claimants through recordation and preventing depletion of the bond until all claimants have an opportunity to notify and record their claims.
In its analysis, the majority summarily dismisses the appellate court’s examination of legislative history in its search for legislative intent. However, by not addressing • the steady and consistent changes made by the Legislature in direct correlation to misinterpretations rendered by this Court, I find the majority mistakenly focuses on its interpretation .of the specific words used by the Legislature without examining why the Legislature employed those very words — its purposeful-intent to rectify this Court’s repeated attempts to expand the PWA beyond its terms. This jurisprudential history and later legislative amendments “overruling” this Court’s opinions are very telling and important to a correct statutory interpretation of the PWA.
Concededly, the direct right of action of a subcontractor in direct contractual privity with the general contractor and his surety most , likely .first arose from our suretyship provisions. La. C.C. art. 3035.[3] However, over time, the Legislature brought the surety bond within the exclu- . sive parameters of the PWA and, in doing so, transformed the direct right of action from contractual to statutory.[4] An in depth examination of-the legislative history of the PWA — the actions taken by the ^Legislature in direct response to interpretations of this Court — clearly reveals this transformation. The Legislature said as much in-Act 16 of 1962.
Likewise, this- Court has over time revised its interpretation of the limits of a surety’s liability on the bond, starting from *312 a statutory limitation then moving to a contractual expansion, returning to its statutory position, and now with the majority opinion resurrecting its contractual approach. And each time the Legislature has responded,' with its last amendment expressly limiting the liability on the bond only to “claims ..., required by this Part.”
Early on this Court held the bond was statutory and therefore limited by the statute:
But the claimant contends that the bond executed by the appellant surety company is broader in its terms than those required by the statute. The bond provides, among other things, that the surety company will pay, if'the contractor does not, ‘all bills for. materials and labor entered into in the construction of said work or used in the course of the performance of the work.’ The engagement of the contractor’s surety ‘to pay for material and labor ‘used in the course of the performance of the work’ is, admittedly, more* comprehensive' than ■the requirement of the statute;
The claimant argues that, whatever, ‘may be the inhibition imposed by the legislative act on the public body executing the contract and bond, there is no inhibition against the incurring by the contractors.surety of a liability .beyond that fixed by the statute. In support of his argument, claimant cites certain decisions from other jurisdictions.
But we see no reason for departing .from the well-established rule of our own jurisprudence that in a statutory bond the statute must be read into the instrument; superadded stipulations must be disregarded and, necessary obligations which have been omitted must be supplied. John H. Murphy Iron Works v. United States F. & G. Co., 169 La. 163, 124 So. 768 [ (1930) ]; Minden Presbyterian Church v. Lambert, 167 La. 719, 120 So. 61 [ (1929) ]; Miller v. Bonner, 163 La. 342, 111 So. 776 [ (1927) ]; Davis v. West Louisiana Bank, 155 La. 245, 99 So. 207 [(1924)]; Id., 155 La. 252, 99 So. 210 [(1924)].
Long Bell Lumber Co. v. S.D. Carr Const. Co., 172 La. 182, 187-88, 133 So. 438, 439-40 (1931). Then in Construction Materials, Inc. v. American Fidelity Fire Ins. Co., 388 So.2d 365, 366-67 (La.1980), with Justice Dennis as organ, this Court contrarily held a surety could contractually extend his liability: t
. The statute’s aim is to define the types of claims to be given protection and to make the governing authority responsible for their deduction and payment out of the contractor’s receipts. The legislation cle,arly does not forbid a contractor and his surety from providing security for the payment of claims falling outside the ambit of statutory protection. In fact, the Public Works Act makes clear that it shall not be construed to deprive any person of his right of action on the contractor’s bond. La. R.S. 38:2247, in pertinent part, provides:
“Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of his right of action on the contractor’s bond which shall accrue at any time after maturity of his claim....”
Defendant surety argues that this provision was intended to provide protection only for “a claimant within the terms” of the statute. We think it clear, however, that the section was designed to protect “any person” with a “right of action on the contractor’s bond.” Claimants whose claims fall within the ambit of'the statutory protection have-no need of the savings clause. It was specifically for the benefit of those persons and claimants whose rights depend solely on *313 the contractor’s bond that'the. section preserving their actions was added,.:
The surety also contends that extending coverage of Public Works bonds will conceivably allow extra-statutory claims to dilute the protection afforded' traditional claimants and public bodies. These are legitimate concerns addressing themselves to the legislative process, which , thus far has given more weight to other considerations. One such consideration might be found in the words of the court of appeal, which aptly suggested that there is “little merit in a rule of law which permits a surety to evade the conditions of its own bond, which it has written, and for which it has charged a premium — ” [Construction Materials, Inc. v. American Fidelity Fire Ins. Co.,] 383 So.2d [1291] at 1294 [ (1980) ].
Construction Materials, Inc., 388 So.2d at 367. Through its enactment of the 1985 amendments, discussed supra, the Legislature codified this Court’s earlier position on the bond’s statutory nature. Then in State v. McInnis Brothers Const., 97-0742 (La.10/21/97), 701 So.2d 937, this Court once again adopted the interpretation of the bond as statutory:'
As ’ explained in Wilkin, supra, La. R.S. 38:2241 et seq. require' of the general contractor a statutory bond (the labor and materials | inpayment bond) and give to the qualifying claimant a “privilege against the unexpended'fund in the possession of the authorities.” Wilkin, 561 So.2d at 70 — Because it is required by the statute and the parties are not free to enter into the contract without it, the bond is in the nature of a statutory. bond which exists for the benefit of the public authority and in essence creates a “privilege” or a source of funds available to the State should it be successful in a suit against the general contractor and the surety- “The Act-is to be strictly construed and the liability of the. surety should not be expanded beyond the statute.” Metro Builders Hardware, Inc. v. Burko Construction, Inc., et al., 93-1970 (La.App. 4th Cir.2/25/94), 633 So.2d 838, writ denied, 94-0727 (La.5/6/94), 637 So.2d 1049. “[T]he obligations of a statutory bond are limited to the exact provisions of the, statute.” Martinolich v. Albert, 143 So.2d 745, 747 (La.App. 1st Cir.1962).
McInnis Brothers Const., 97-742 at pp. 9-10, 701 So.2d at 944.
• Our role as civilian jurists is to interpret the laws in search of the Legislature’s intent. In this matter, the Legislature has made clear its intent to limit the liability of the surety on the bond to only those claims provided for in the PWA. Under the facts herein, the only right of action on the bond the PWA recognizes and provides for is that of a claimant “who has complied with the notice and recordation requirements of R.S. 38:2242(B),” The majority’s reading of the statutory language authorizes a right of action on the surety bond .arising from the “contractual privity” between the general contractor and the subcontractor not provided for by the PWA in direct contravention of the immunity provisions set forth in-Lja, R.S. 38:2241(C). In so doing, the majority once again adopts the position of this. Court in Honeywell, and Construction Materials, Inc., which ironically prompted the. very amendments we are now charged with interpreting. Therefore, in my view, the only interpretation that will give effect to all the statutory provisions and comply with the Legislature’s expressed intent is one that requires compliance with the notice and recordation requirements before a subcontractor may proceed directly against the surety on the bond.
InMuch is also made by the majority herein of “K” Construction, Inc. v. Burko *314 Construction, Inc., 629 So.2d 1370 (La.App. 4th Cir.1993), authored by former Chief Justice Dixon, then sitting pro tem-pore, in which the court held:
styled as a prescription article, R.S. 38:2247 does not actually create a cause of action on the bond.
[[Image here]]
While it is arguable that the reason for the notice provision of R.S. 38:2242 is to ensure that the governing authority and its surety are not subject to claims long after a project is completed, it is not reasonable to penalize a sub-contractor who has given timely notice' sufficient to apprise the governing authority of its claim, merely omitting to provide the governing authority with a sworn statement.
[[Image here]]
Simply put, ■ the [1] Public Works Act does not appear to envision a situation where suit is filed before the notice of default is recorded. Consequently, our task is to determine if what the claimants did in this case was sufficient to notify HANO and, in Laurent’s case, Burko of the claims.
“K” Construction, Inc., 629 So.2d at 1372-74 (emphasis added). This interpretation is flawed, however, in its complete failure to recognize as well as preserve the notice to other claimants, which the recordation requirement of La. R.S. 38:2‘242(B) is meant to ensure. Further, in holding La. R.S. 38:2247 is merely prescriptive, the question from where does the right of action arise is left-unanswered. The logical resolution of this inquiry is ultimately fatal to “K” Construction ⅛ conclusion because if the right does not arise from the PWA, ' the subcontractor’s action is preempted by the surety’s statutory immunity.
Guided by the Legislature’s intent expressed in its 1962 and 1986 amendments to the PWA, I And a claimant, in order to maintain its direct action against the surety on the bond under La. R.S. 38:2247, must first satisfy the notice and recordation requirements of La. R.S. 38:2242(B) as--well as file suit within the one-year prescriptive period; otherwise, its action on the bond prescribes. This interpretation- ensures the primary purpose of the PWA — the proportional payment of all claims — is both met and satisfied.
112Finally because its holding is contrary to this interpretation, I would overrule “K” Construction. And I would strongly discourage reliance on any statement in the Louisiana Practice Series, which likewise does not conform to the Legislature’s clear intent recited above.

., In its entirety, Section 3 provided:
Be it further enacted, etc., That any person, firm, corporation or association of per.sons ■ or partnership to whom any money shall be due, on account of having done any work, performed any labor,, or furnished any material in the construction, erection, alteration or repair of any such building, public road or public work or improvement shall within forty-five days after the acceptance of said work by the State, parish, city, towp, village, public board or body, or within forty-five days after the default of the contractor or sub-contractor, file with the said authority a sworn statement of the

. La. C.C. art. 3035 provides: "Suretyship is an accessoiy contract by which a person binds himself to a creditor to fulfill the obli.gation of another upon the failure of the latter to do so."- And since the inception of our Civil Code, beginning in the Digest of Civil Laws of 1808, which became the Louisiana Civil Code of 1808, Louisiana has codified rules relating to suretyship, which gives creditors rights of action to proceed against the surety for fulfillment of the obligor’s contractual' obligation. See La. C.C. 1808, p. 428, Art. 1; La. C.C. art. 3004 (1825); La. C.C. art. 3035 (1870); see also CN 1804, Art. 2011 ("Celuí quí se rend caution d’une obligation, se soumet envers le créancier á'satisfaire á cette obligation, si le dabiteur n’y satisfait pas luiméme” translated "The person who becomes surety on a debt agrees with the creditor to satisfy the obligation if the debtor does not."). ,■ < -

. . Significantly, the surety herein is not bound to the subcontractor. Rather, it is bound to the State by operation of the PWA. And un-[1] like of old, the subcontractor is not privy to the surety contract; the surety has no contractual relationship with the subcontractor. The subcontractor’s right of action on the bond now arises strictly from the PWA.

. U.S: Pollution Control was authored by Judge, now Justice, Jeannette Theriot Knoll.