BOLIN, Judge.
This case has been consolidated with NO. 9867, styled JOHN J. NESBITT, INC. VS LOUISIANA PLUMBING COMPANY, INC., ET AL. The issues being the same, we shall discuss them both in this opinion. The facts are undisputed and the legal questions presented require our determination of the correctness of the trial court’s decision sustaining motions for summary judgments on behalf of the prime contractor, Tudor Construction Company and its bondsman, Fidelity and Deposit Company of Maryland.
Essentially, the facts are these: Tudor Construction Company entered into a contract with the Louisiana State Board of Education on April 26, 1960 for the construction of a dormitory building for Northeast Louisiana State College at Monroe, Louisiana. In compliance with the provisions of the Public Works Act (LSA-R.S. 38:2241-38:2247) a bond was executed with Fidelity and Deposit Company of Maryland as surety. The contract and bond were recorded on June 16, 1960.
Tudor Construction Company subcontracted a portion of the work to Louisiana Plumbing Company Inc., and on July 1, 1960 and July 14, 1960, this subcontractor issued purchase orders to appellants, York and Nesbitt, for the supplying of certain equipment. The equipment called for by *522 the purchase orders was supplied by appellants during the early months of 1961, and, at that time, became incorporated into the building.
The project was accepted by the Board of Education and, on June 2, 1961, a formal acceptance of the job was filed of record. After the expiration of the statutory period for filing notice of claims, the Board of Education paid to Tudor Construction Company the balance due under the contract, and Tudor in turn paid to Louisiana Plumbing Comany the balance due on its subcontract. Appellants gave no notice of their claims to Tudor or its surety, Fidelity and Deposit Company until November 1961, after the said payments had been made. The amount of the claims remaining unpaid, appellants filed suits against defendants, Louisiana Plumbing Company, Inc., Tudor Construction Company, Inc., and Fidelity and Deposit Company of Maryland, as subcontractor, prime contractor, and bondsman respectively. Default judgments were rendered against Louisiana Plumbing Company, Inc., and motions for summary judgments were sustained in favor of the prime contractor and the bonding company. The court concluded plaintiffs were amenable to the provisions of the 1960 amendment to LSA-R.S. 38:2247, requiring, within 45 days of notice of acceptance, either recordation or written notice of a claim by a creditor having a contractual relationship with a subcontractor but no contractual relationship with the contractor. The court further decided such application did not deprive plaintiffs of vested rights and did not impair obligations of their contracts.
As pointed out by appellants, when the contract and bond in these cases were executed on April 26, 1960, as well as when the firm purchase orders were contracted with York and Nesbitt on July 1, 1960 and July 14, 1960, respectively, LSA-R.S. 38:-2242 provided in part as follows:
“Any person to whom money is due for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works, or furnishing materials and supplies for use in machines used in the construction, alteration, or repair of any public works, may, after the maturity of his claim and within forty-five days after the rec-ordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done. * * * ” (Emphasis added.)
The statute further provided in Section 2247 that:
“Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of his right of action on the contractor’s bond which shall accrue at any time after the maturity of his claim.’1 (Emphasis added.)
We agree with appellants that the jurisprudence had firmly established that it was not a prerequisite under the statute as then written that a materialman or supplier record his claim or serve any notice thereof in order to assert his right of action against the surety on the contractor’s bond.
However, thereafter, by Act 117 of 1960, which did not become effective until July 17, 1960, Section 2247 was amended to provide:
“Nothing in this Part shall be construed to deprive any person or claimant within tlie terms of this Part of his right of action on the contractor’s bond which shall accrue at any time after maturity of his claim; except that before any person having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor *523 or the surety on the bond furnished by the contractor, he shall record his claim as provided in R.S. 38:2242 or give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the state of Louisiana.” (Emphasis added.)
It is conceded in the cases before this court that the claims of Nesbitt and York were not recorded nor notices thereof given in the manner and time prescribed and specified by the amendment to LSA-R.S. 38:2247. The sole contention of plaintiffs-appellants is that the application by the trial court of the quoted amendment to the contracts here sued on violates both the Federal and State Constitution in that such application impairs the obligations of contracts and deprives appellants of substantive rights which they allege became vested before the effective date of the amendment.
Appellants have furnished the court with an excellent brief, replete with authorities purporting to substantiate their position. However, we think, as did the trial court, that appellants have overlooked the real crux of the case. To impair the obligations of a contract or to deprive persons of vested rights assumes that the obligations or vested rights were in existence at the time the law or amendment complained of became effective.
Here, although the contract became-effective between the immediate parties, -il e., Nesbitt and York and Louisiana Plumb-, ing Company prior to the amendment, with a potential future cause of action and right to sue the. principal contractor 'and the bondsman implicit in the contract, no claim had "matured” in favor of York or Nesbitt at the time of the amendment.
Appellants’ argument is predicated upon the erroneous proposition that at the time they agreed to sell to the subcontractor materials for the job, they acquired vested rights against the general contractor and his surety. Whatever rights appellants had against the general contractor or the surety arose solely from the provisions of the Public Works statutes under the terms of which the contract and bond contain stipulations pour autrui for the benefit of certain persons. (LSA-R.S. 38:2241). Only those persons who provide labor or materials actually incorporated into the job become beneficiaries of the statute and the statutory bond. Louisiana Highway Commission v. McCain (1941), 197 La. 359, 1 So.2d 545; B. & G. Crane Service, Inc. v. Anderson Bros., Corp., La.App., 132 So.2d 681 (1961).
One of the purposes of the Public Works Act is to substitute an action against the general contractor and his surety for the lien against the works constructed which would ordinarily accrue under the general law. As such, only those suppliers whose materials are actually incorporated into the job are deemed to have accepted the benefit of the statute and the statutory bond and to have acquired rights thereunder. Thus, it is clear that at the time appellants’ materials were incorporated into the building, the statutory amendment had been in effect for more than six months. Whatever rights arose after the effective date of the amendment would clearly be subject to the provisions of the act. Such application was properly held to be prospective and not retroactive and deprived appellants of no vested rights of action against the principal contractor or the surety until "after the maturity” of their claims, i. e.', when the “materials or supplies were furnished for the construction, alteration or repair of any public works”. When *524 such right accrued the statute had been amended to make it mandatory that the contractor be given written notice of claims against subcontractors or that the claims be recorded within 45 days from the date of notice of acceptance by the contracting authority.
For the reasons assigned, the judgment of the lower court sustaining the motion for summary judgment is affirmed.
Affirmed.