REID, Judge.
This suit was brought by Moretti-Harrah Marble Company, a furnisher of polished marble, against Union Construction Company, Inc., primary contractor; the St. James Parish School Board, the owner; Maryland Casualty Company, the surety on the contractor’s bond; and J. C. Champagne, Inc., the sub-contractor of Union Construction Company, Inc., to enforce the payment for materials sold by plaintiff to J. C. Champagne, Inc., under a contract ’awarded to Union Construction Company, Inc. for construction of a gymnasium for the St. James Parish School Board.
The facts are:
On November 4, 1959 a contract was entered into between Union Construction Company, Inc., and the St. James Parish School Board, with the Maryland Casualty Company as surety, for the construction of the Lutcher School Gymnasium at St. James School located in St. James Parish, Louisiana. The Union Construction Company, Inc., then entered into a subcontract with J. C. Champagne, Inc. for installation of marble stiles and partitions in the building.
On March 8, 1960 plaintiff sold to defendant J. C. Champagne, Inc., a shipment of marble, which was billed on June 6, 1960 and shipped to J. C. Champagne, Inc., at its Baton Rouge address. On July 6, 1960 a claim for the price of the marble was made by the plaintiff against J. C. Champagne, Inc.
On September 27, 1960 the contract was accepted and formal acceptance was recorded in the mortgage records of St. James Parish. On November 10, 1960 a lien certificate was obtained showing no liens had been filed as of that date.
*318 On May 1, 1961, more than eight months after filing of the acceptance, the first notice was given by plaintiff to Union Construction Company, Inc. and Maryland Casualty Company that its claim for materials sold to J. C. Champagne, Inc., was outstanding. The record discloses defendant Union Construction Company paid defendant J. C. Champagne, Inc., the full amount of its contract which would have included the purchase of the said marble.
On September 8, 1961 suit was filed by the plaintiff in the amount of $1738.00 representing the cost of marble sold to the subcontractor, J. C. Champagne, Inc.
Exceptions of no right or cause of action were filed by Union Construction Company, Inc. and Maryland Casualty Company leveled at the capacity of plaintiff to sue in the Courts of this State by virtue of LSA-R.S. 12:212. The exceptions were referred to the merits. Defendants Union Construction Company, Inc. and Maryland Casualty Company then filed an answer and third party action citing J. C. Champagne, Inc., to answer which J. C. Champagne, Inc., failed to do and on March 28, 1962 the plaintiff confirmed its default against J. C. Champagne, Inc., reserving its rights against all other defendants.
Defendants Union Construction Company, Inc. and Maryland Casualty Company filed an exception of no right or cause of action leveled at the failure of plaintiff to record its claim within 45 days after the recordation of the notice of acceptance as required by LSA-R.S. 38:2242, as amended, the record showing plaintiff at no time had ever recorded its claim in the mortgage records of St. James Parish. These exceptions of no right or cause of action were overruled and judgment signed accordingly, whereupon defendant Union Construction Company, Inc. filed additional exceptions of no right or cause of action in which it re-urged the exceptions previously overruled by the Court, that plaintiff had failed to either record its claim within 45 days after the recordation of the notice of acceptance by the owner of the work involved in the contract or to send such notice to either exceptor by registered or certified mail as required by LSA-R.S. 38:2247, and that plaintiff had no right or cause of action as against Union Construction Company, Inc. since plaintiff failed to record its claim as required by LSA-R.S. 38:2242. Defendants further excepted on the grounds plaintiff had failed to meet the test to be entitled to a lien since plaintiff did not perform any labor in attaching the materials to the building.
The case was tried and submitted and for written reasons assigned the Trial Court rendered judgment in favor of plaintiff and against defendant Maryland Casualty Company, but dismissed plaintiff's suit as against Union Construction Company, Inc. From that judgment both plaintiff and defendant Maryland Casualty Company have appealed.
The issue involved in this case is an interpretation of the provisions of the 1960 amendment to LSA-R.S. 38:2247, requiring, within 45 days of notice of acceptance, either recordation or written notice of a claim by a creditor having a contractual relationship with a subcontractor but no contractual relationship with the contractor, before the parties shall have a right of action against the contractor or surety on the bond furnished by the contractor. At the time the contract was entered into, as well as when the purchase orders were contracted, the law in this regard was as follows:
LSA-R.S. 38:2242 provided:
“Any person to whom money is due for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works, or furnishing materials and supplies for use in machines used in the construction, alteration, or repair of any public works, may, after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a *319 sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done. % ‡ * ”
and LSA-R.S. 38:2247 provides:
“Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of his right of action on the contractor’s bond which shall accrue at any time after the maturity of his claim.”
It is clear, therefore, under the law it was not a prerequisite under the statute as then written that a materialman or supplier record his claim or serve any notice thereof in order to assert his right of action against the surety on the contractor’s bond. However, by Act 117 of 1960, which became effective on July 17, 1960, Section 2247 was amended to provide :
“Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of his right of action on the contractor’s bond which shall accrue at any time after maturity of his claim; except that before any person having a direct contractual relationship with a subcontractor but no contractual relationship with the contractor shall have a right of action against the contractor or the surety on the bond furnished by the contractor, he shall record his claim as provided in R.S. 38:2242 or give written notice to said contractor within forty-five days from the recordation of the notice of acceptance by the owner of the work or notice by the owner of default, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor or service was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office in the State of Louisiana.”
Thus we have a situation under the facts herein, where plaintiff had not recorded his claim nor given notice thereof in the manner and time prescribed and specified by the amendment to LSA-R.S. 38:2247.
Defendant Maryland Casualty Company took the position that as plaintiff failed to comply with Act 117 of 1960 as to notice and/or recordation of its claim, and as the acceptance of the contract was after the effective date of the amendment to LSA-R.S. 38:2247, plaintiff had lost its right tc proceed against Maryland Casualty Company, the surety on the contractor’s bond. Plaintiff on the other hand took the position that the parties’ rights were fixed as of the execution of the contract between plaintiff and the subcontractor and that LSA-R.S. 38:2242 was the effective law at the time of the execution of the contract and at that time under LSA-R.S. 38:2247 plaintiff’s right to sue Maryland Casualty Company was absolute without the necessity of filing a lien, and it had a right to bring the suit under the law as it existed at the time of the execution of the contract.
The Trial Court in its written reasons for judgment agreed with the position of plaintiff and held that the right of the plaintiff to pursue the claim against Maryland Casualty Company without recording its lien was the law at the time of the execution of the contract and 'fixed the rights and remedies of the parties at that time and subsequent legislation that attempted to abrogate these rights would in the opinion of the Court operate retroactively and, therefore, be unconstitutional as impairing the obligation of the contract.
This very issue was passed upon recently by the Second Circuit in York Corporation v. Louisiana Plumbing Co., La.App., 151 So.2d 520, cert. den. May 7, 1963, wherein under similar circumstances the Court held as follows:
“Appellants’ argument is predicated upon the erroneous proposition that at *320 the time they agreed to sell to the subcontractor materials for the job, they acquired vested rights against the general contractor and his surety. Whatever rights appellants had against the general contractor or the surety arose solely from the provisions of the Public Works statutes under the terms of which the contract .and bond contain stipulations pour autrui for the benefit of certain persons (LSA-R.S. 38:2241). Only those persons who provide labor or materials actually incorporated into the job become beneficiaries of the statute and the statutory bond. Louisiana Highway Commission v. McCain (1941), 197 La. 359, 1 So.2d 545; B & G Crane Service, Inc. v. Anderson Bros., Corp., La.App., 132 So.2d 681 (1961).”
“One of the purposes of the Public Works Act is to substitute an action against the general contractor and his surety for the lien against the works constructed which would ordinarily accrue under the general law. As such, only those suppliers whose materials are actually incorporated into the job are deemed to have accepted the benefit of the statute and the statutory bond and to have acquired rights thereunder. Thus, it is clear that at the time appellants’ materials were incorporated into the building, the statutory amendment had been in effect for more than six months. Whatever rights arose after the effective date of the amendment would clearly be subject to the provisions of the act. Such application was properly held to be prospective and not retroactive and deprived appellants of no vested rights of action against the principal contractor or the surety until ‘after the maturity’ of their claims, i. e., when the ‘materials or supplies were furnished for the construction, alteration or repair of any public works.’ When such right accrued the statute had been amended to make it mandatory that the contractor be given written notice of claims against subcontractors or that the claims be recorded within 45 days from the date of notice of acceptance by the contracting authority.”
.The holding of the Second Circuit Court of Appeal in the York case was that plaintiff acquired no rights under the statute until after the materials were installed in the project and since this installation took place after the effective date of the amendment of the statute the materialman’s rights were not accrued until after the effective date of the Act.
An examination of the record in this case discloses that it is barren of any evidence necessary under the rule of the York case to show the effective date when the plaintiff’s rights arose, that is, when the installation of the materials took place. Both the plaintiff and defendants in their briefs take opposite views on this matter, plaintiff claiming the material was installed prior to the effective date of the Act and defendant maintaining it was installed after the effective date of the Act, but neither position is substantiated by the record. The Trial Court in its reasons for judgment made no finding of fact on this point but merely held that the effective date in which plaintiff’s rights arose was the date of entering into the contract with the' subcontractor.
Plaintiff-Appellee appeals from the judgment insofar as it dismissed plaintiff’s suit against Union Construction Company, Inc., as defendant in this suit. In its brief plaintiff states the only reason for the appeal was to protect their rights against the contractor because the original judgment was against the surety only.
We are in accord with the holding of the Court of Appeal, Second Circuit, in the York case, and it is our opinion that insofar as the judgment rendered by the Lower Court against the defendant, Maryland Casualty Company is concerned the same should be reversed and the matter remanded to the District Court for the sole determina *321 tion as to when the materials were actually installed on the premises; reserving to the Appellee its right under their appeal against the co-defendant, Union Construction Company, Inc.
Reversed and remanded.